## Commonwealth v. Jeca Corporation

*Edward Baker*, for Commonwealth.

*Schumacker & Lunkenheimer*, and *Reynolds & Lipsitt*, for defendant.

SHELLEY, J., July 22, 1963.—This as an appeal by defendant-appellant, a corporate taxpayer (hereinafter referred to as Jeca) from the action of the Board of Finance and Revenue in refusing its petition for a review of a capital stock tax resettlement for its fiscal year ending April 30, 1959.

Under the provisions of the Act of April 22, 1874, P. L. 109, 12 PS §688, et seq., the parties have entered into a stipulation for the trial of this case without a jury.

The parties have also stipulated the facts. We adopt their stipulation as our findings of fact and incorporate the same herein by reference. In the course of our opinion we will discuss those facts which in our judgment are essential to the disposition of this case.

It appears that Jeca was incorporated under the laws of the Commonwealth of Pennsylvania on December 19, 1947, and commenced business on January 1, 1948.

The purpose of the corporation was:

"To buy, sell, lease, exchange, maintain, manage, construct, repair, improve and generally deal in building, factories, real estate, machinery and equipment, and to buy, sell, fabricate, machine, assemble, repair

and generally deal in metal, wood, plastics and similar products."

Shortly after its incorporation Jeca acquired real estate in the city of Philadelphia, upon which there was erected a machine shop and steel fabrication plant and contained therein was machinery and equipment.

From the date of the commencement of business by Jeca to the close of its fiscal year ending on April 30, 1959, Jeca has at all times leased all of its assets consisting of land, buildings, building fixtures, machinery and equipment to Richmond Machine Company (hereinafter referred to as Richmond), a corporation likewise incorporated under the laws of the Commonwealth of Pennsylvania. Richmond has at all times used the assets leased by it from Jeca exclusively for manufacturing purposes within the Commonwealth of Pennsylvania and has received the benefits of the "manufacturing exemption".

Jeca has not at any time employed any of its assets in manufacturing other than by the leasing of them to Richmond. At all times pertinent to these proceedings the officers and directors of Jeca and Richmond have been the same and the stockholders of Jeca owned 60 percent of the issued and outstanding shares of Richmond. Since its incorporation Jeca has paid no salary or wages other than a normal compensation to the officers referred to above and had no employes other than such officers. Jeca's entire income since its incorporation arises solely from the rental of the assets to Richmond.

It has been determined that Jeca is liable to pay capital stock tax under the provisions of the Act of June 1, 1889, P. L. 420, sec. 21, 72 PS §1871, as amended, which, in pertinent part only, provides as follows:

"(a) That every domestic corporation . . . shall be subject to, and pay into the treasury of the Com-

monwealth annually, through the Department of Revenue, a tax at the rate of five mills upon each dollar of the actual value of its whole capital stock of all kinds, . . ."

As has been indicated above the "whole capital stock of all kinds" of Jeca was invested in real estate, machinery and equipment leased to Richmond and used as a manufacturing machine shop and steel fabrication plant.

Jeca claims that its capital stock is expressly relieved from the payment of capital stock tax by reason of the provisions of the Act of 1889, supra, as amended by the Act of August 23, 1961, P. L. 1100, which provides in pertinent part as follows:

"Provided further, That . . . the provisions of this section shall not apply to the taxation of the capital stock of corporations, . . . organized for manufacturing or processing purposes, which is invested in and actually and exclusively employed in carrying on manufacturing or processing within the State, . . . but every corporation, . . . organized for the purpose of manufacturing or processing shall pay the State tax of five mills herein provided, upon such proportion of its capital stock, if any, as may be invested in any property or business not strictly incident or appurtenant to the manufacturing or processing business, . . . it being the object of this proviso to relieve from State taxation only so much of the capital stock as is invested purely in the manufacturing or processing plant and business."

The Act of 1961 made the foregoing proviso applicable retroactively to fiscal years beginning in 1958 and thereafter, and hence applicable to Jeca's fiscal year herein involved.

Jeca likewise contends that its capital stock is not subject to taxation by reason of the Act of 1889, supra,

as amended by the Act of July 11, 1901, P. L. 668, 72 PS §1893, which provides as follows:

". . . no corporation or limited partnership association organized for manufacturing purposes, whose manufacturing plant or plants, in whole or in part, are or may be leased to another corporation, limited partnership, individual or individuals, shall, by reason of such leasing, be deprived of the exemption from taxation upon its capital stock, or any part thereof, to which under existing laws it would be entitled if such lease had not been made.

"All acts or parts of acts inconsistent herewith are hereby repealed."

The Commonwealth concedes that Jeca is organized for manufacturing purposes. However, the Commonwealth contends first that since Jeca does not and never has produced one manufactured article itself, that its capital is not exclusively employed in carrying on manufacturing; that it does not engage in the manufacture of any article and that its sole income arises from rentals received by it from Richmond, which company has the same officers and directors as Jeca; and secondly, that Jeca is not afforded the exemption under the Act of 1901, supra, which provides that the manufacturing exemption is not to be lost where the one claiming it leases a manufacturing plant or plants to another, provided that the one claiming such exemption would have been entitled to it had the lease not been made. The Commonwealth contends that this particular provision of the Act of 1901 is only applicable where a corporation has at one time been engaged in manufacturing in the plant that is now being leased.

The proviso of the Act of 1889, supra, as amended, relieving corporations from capital stock tax sets forth two conditions. The first condition is that the corporation must be organized for manufacturing purposes. Whether or not a corporation is organized for man-

ufacturing purposes is a fact to be determined by an examination of the articles of incorporation and is not to be determined from whether or not a corporation is "in fact engaged in manufacturing": Commonwealth v. Paul W. Bounds Company, 316 Pa. 29 (1934). There is no problem in this respect as the Commonwealth concedes that Jeca is organized for manufacturing purposes.

The second requirement in the proviso relieving a corporation from capital stock tax is that its capital stock be invested in and actually and exclusively employed in carrying on manufacturing and, after specifically pointing out that a corporation will be liable for the tax on such proportion of its capital stock invested in any property or business not strictly incident or pertinent to the manufacturing business, the act reiterates that the object of the proviso is to relieve from taxation capital stock invested in manufacturing business.

The statute does not require that the taxpayer be engaged in manufacturing. Not only is the taxpayer not required to be engaged in manufacturing in the year in which it is relieved from the tax, but there is no requirement that it shall have been engaged in manufacturing in some year prior to the year in which it claims the benefits of relief from tax. The fallacy of maintaining that the corporation must previously have been engaged in manufacturing presumably stems from a misconception of the nature of the tax. While the corporation is the taxpayer, the capital stock tax is a tax upon the property and the assets of a corporation: Commonwealth v. Philadelphia Market Street Subway-Elevated Railway Company, 408 Pa. 357, 361 (1962), and cases therein cited at page 362. It is the use to which the property is put which is determinative of whether or not the property is to be relieved from the capital stock tax. The statute clearly provides that

property may be used for different purposes and provides for relief from tax for some of the property owned by the corporation and not for other property if it is not used as required.

It is the contention of Jeca that the instant case is ruled by Commonwealth v. Cambria Iron Company, 5 Dauph. 101 (1902), and we think rightfully so. Cambria operated iron and steel mills until 1898, when it ceased operating and leased its plant in its entirety to another corporation, which corporation continued the manufacturing operation. Cambria claimed exemption from the tax on the ground that the facts brought it within the proviso of section 21 of the Act of June 8, 1893, P. L. 355, which amended the Act of 1889, supra.

It was decided in the Cambria case that a corporation which no longer operated its plant, but leased it in its entirety to another company which actually carried on manufacturing in the plant was, nevertheless, entitled to the manufacturing exemption on its capital stock so invested even though it was not engaged in manufacturing. This decision was based on the Act of 1889, supra, as amended, and was without the benefit of the Act of 1901, supra, which latter act was in fact enacted while the Cambria case was pending and presumably for the purpose of arriving at the same result if the court should have any doubt as to the legislative intent.

While it is a fact that in the Cambria case the taxpayer had at one time operated its plant as a manufacturing business, in reaching the conclusion no consideration was given to what the lessor had or had not done before the lease or the tax year in question. It was held that the taxpayer's capital stock was actually and exclusively engaged in carrying on manufacturing during the tax year in question and was entitled to the exemption even though by reason of the lease the actual operation was carried on by the lessee.

The purpose of granting the exemption in the Act of 1889, supra, seems to be to encourage the investment and use of capital in manufacturing enterprises so that Pennsylvania's resources might be developed, its people given employment and the public welfare advanced: Commonwealth v. Altoona Foundry & Machine Company, 18 Daup. 569, 571 (1915); Commonwealth v. Williamsport Rail Company, 250 Pa. 596 (1915). The General Assembly could have exempted from tax all corporations engaged in any manufacturing, but this would have been unnecessarily broad in relation to the purpose. The General Assembly likewise could have relieved from tax corporations engaged exclusively in manufacturing, but this would have been unnecessarily narrow and could have weakened the achievement of the legislative purpose. Instead, the General Assembly has relieved from tax neither more nor less than is necessary to encourage manufacturing by relieving from the tax the property employed in manufacturing rather than the corporation engaged in manufacturing.

Prior to the present statute, the proviso relieving from tax in the Act of June 30, 1885, P. L. 199, provided that the taxpayer be "actually carrying on manufacturing within the state", and this language was continued in the Act of June 1, 1889, supra, and in an amendment of June 8, 1891, P. L. 229. Under this proviso, it was held in Commonwealth v. Macungie Iron Co., 3 Dauph. 12 (1900), that the owner of a manufacturing plant which was leased and used by the tenant for manufacturing purposes was not entitled to be relieved of capital stock tax. By Act of June 8, 1893, P. L. 355, the relieving proviso was changed to its present form so that it now no longer relieves the corporation actually carrying on manufacturing, but it relieves the property actually employed in manufacturing. The history of this legislative change clearly

indicates that it was the legislative intent not to have the relieving proviso related to what the owner of the property was doing in the year of taxation, and it follows, a fortiori, that there could have been no legislative intent that the corporation shall have engaged in manufacturing in some prior year. There is obviously no causal connection between a purpose presently to encourage manufacturing and a requirement that a corporation shall have manufactured in the past.

While the Cambria case, supra, was pending, the General Assembly enacted the Act of 1901, supra, which provided that a corporation which leases its manufacturing plant shall not be deprived of the exemption from the capital stock tax to which under existing laws it would have been entitled if such lease had not been made. The Cambria case decided that this act merely construed existing legislation and arrived at the same result without the benefit of this act which was not applicable to the tax year involved in that case.

The fallacy of the Commonwealth's position, which is based on the premise that a corporation would not have been entitled to the exemption if it were not manufacturing at the time the lease was made, lies in the fact that a corporation merely owning a manufacturing plant would not be exempt from capital stock taxation even if it had not leased its plant. Existing law would require the corporation, in order to be entitled to the exemption, to be employing its manufacturing plant for manufacturing purposes in the year in which it would be entitled to the exemption. The exemption would thus be limited only to the year in which manufacturing ceased and leasing commenced. This is not the way the law has been construed or enforced. Moreever, a corporation which had employed its manufacturing plant in manufacturing in a prior year would not be exempt from taxation upon its capital stock in any subsequent year by reason of such prior manufac-

turing whether or not it had leased its property. The capital stock tax is an annual tax and liability for any year must logically and legally depend upon the facts of that year.

Section 58 of the Act of May 28, 1937, P. L. 1019, article IV, 46 PS §558 (Statutory Construction Act) provides:

"All provisions of a law of the classes hereafter enumerated shall be strictly construed:

(5) Provisions exempting persons and property from taxation; . . .".

In construing this provision of the Statutory Construction Act, the Supreme Court of Pennsylvania said in Commonwealth v. Williamsport Rail Company, supra, on page 598:

"The corporation seeking exemption from tax upon its capital stock must bring itself clearly within the exceptions mentioned in the taxing statute. The burden is upon it to show that the necessary conditions exist entitling it to exemption."

See also McGuire v. Pittsburgh School District, 359 Pa. 602 (1948).

In our opinion Jeca has met the burden imposed upon it. Therefore, the action of the Board of Finance and Revenue denying Jeca relief from capital stock tax upon its property used exclusively in manufacturing in Pennsylvania must be overruled and the appeal of Jeca must be sustained. We therefore make the following

### Order

And now, July 22, 1963, the appeal of Jeca Corp., defendant-appellant, is sustained and it is directed that judgment be entered in favor of the Jeca Corp. unless exceptions be filed to this order within 30 days from the date hereof. The prothonotary shall notify the parties or their counsel of this order forthwith.