Commonwealth *v.* Weldon Pajamas, Inc.,
Appellant.

Argued May 22, 1968. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harry J. Rubin,* with him *Krekstein and Rubin,* for appellant.

*Edward T. Baker,* Deputy Attorney General, with him *William C. Sennett,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, November 27, 1968:

This appeal involves the question whether a foreign corporation, subject to the franchise tax, which does *not actually engage* in manufacturing in Pennsylvania is nonetheless entitled to the manufacturing exemption with respect to certain tangible property owned by it in Pennsylvania and with respect to compensation paid to several employees in Pennsylvania. The Commonwealth Court answered the question in the negative and entered final judgment for the Commonwealth, from which the taxpayer appealed.

Appellant, Weldon Pajamas, Inc. ("Weldon, N.Y."), is a New York corporation organized, inter alia, for

manufacturing purposes and authorized to transact business in Pennsylvania. Its principal office is in New York City. Appellant in its New York office purchases cloth suitable for use in pajamas and bathrobes and ships it to Williamsport, Pennsylvania, where Weldon Manufacturing Company of Pennsylvania ("Weldon, Penna."), a Pennsylvania corporation which is a wholly-owned subsidiary of appellant, manufactures the cloth into finished products and stores them in its own warehouse. Upon receipt by appellant of an order, finished products are shipped directly to the customer from Weldon, Penna.'s warehouse in Williamsport. The cloth furnished to Weldon, Penna. by appellant remains the property of appellant through all the stages of manufacture into the finished product. Three employees of appellant, one of whom is also President of Weldon, Penna. work at Weldon's plant in Pennsylvania to coordinate the activities of the two corporations.

Weldon, Penna. receives the manufacturing exemption on its capital stock tax for all the assets owned by it and used in manufacturing in Pennsylvania. This does not include the raw material, work in process and finished inventory inasmuch as those assets are owned by appellant. In preparing its franchise tax report for the fiscal year ended June 30, 1959, appellant (Weldon, N.Y.) excluded from the numerator of the tangible property fraction the average value of the raw material, work in process and finished inventory located at Weldon's plant in Pennsylvania and excluded from the numerator of the wages and salaries fraction the compensation paid to its employees working in Pennsylvania. The above items were excluded in the taxpayer's return on the basis that they were actually and exclusively used in manufacturing.

The franchise tax is imposed on foreign corporations doing business in Pennsylvania. While it dif-

fers in certain respects from the capital stock tax which is applicable to domestic corporations, both taxes are governed by the same basic statute, the Act of June 1, 1889, P. L. 420, §21(b), as amended, 72 P.S. §1871. It has been frequently pointed out that these two taxes were designed to subject domestic and foreign corporations to substantially similar tax burdens. *Commonwealth v. National Biscuit Co.*, 390 Pa. 642, 136 A. 2d 821 (1957); *Commonwealth v. Columbia Gas Corp.*, 336 Pa. 209, 8 A. 2d 404 (1939). Thus, despite some differences in statutory language, we are convinced that the Legislature intended the manufacturing exemption to be administered uniformly and in accordance with the same basic principles, regardless of whether the taxpayer was a domestic or a foreign corporation.

Historically, the manufacturing exemption, with but one exception, has been reserved to those corporations organized for manufacturing purposes and *actually engaged* in manufacturing in Pennsylvania. The exception to this rule relates to a corporation organized for manufacturing purposes and owning a manufacturing plant which is leased to another corporation which is actually engaged in manufacturing. See Act of July 11, 1901, P. L. 668, 72 P.S. §1893. We view this policy as being a fulfillment of the legislative intent and in furtherance of the purpose to be served by the exemption.

Appellant is organized for manufacturing purposes but is *not* actually engaged in manufacturing in Pennsylvania or elsewhere. Nor does it own a manufacturing plant which is leased to a manufacturer. It argues, however, that the raw material, work in process and finished inventory which it owns in Pennsylvania are actually and exclusively used in manufacturing and that its employees working in Pennsylvania are exclusively engaged in manufacturing.

Our analysis of the statute and its long and involved history convinces us that, but for the exception already noted, the Legislature intended the manufacturing exemption to apply only to those corporations actually engaged in manufacturing in Pennsylvania.

The point raised, therefore, falls within the scope of the decision in *Commonwealth v. Williamsport Rail Company*, 18 Dauphin 189 (1915), aff'd, 250 Pa. 596, 95 Atl. 795 (1915). In that case the taxpayer, organized for manufacturing purposes, purchased raw material which was shipped to Sweets Steel Company where it was manufactured into finished products. The products were then sold by the taxpayer. The argument was made that the raw materials and finished products were exempt as being employed in manufacturing. In affirming the denial of the exemption by the court below, this Court spoke as follows on page 600:

"No portion of the capital stock of the defendant company is employed in the manufacture of anything within this State. It does not manufacture, or pretend to manufacture, anything anywhere. Its capital is actually employed in purchasing raw material and paying another corporation for converting the same into a product which it sells. Though it was incorporated as a manufacturing company, the correct conclusion of the court below was that it is 'carrying on nothing more than a mercantile business.' "

Appellant attempts to overcome the impact of the *Williamsport Rail* case by trying to distinguish the facts from the present case and by arguing a supposed conflict between that case and the holding of the earlier *Commonwealth v. Cambria Iron Co.*, 5 Dauphin 101 (1902). Whatever factual distinctions may exist, the holding of this Court in *Williamsport Rail* is broad enough to cover the present situation. The pertinent facts are the same: appellant does not manufacture,

or pretend to manufacture, anything anywhere. Nor do we view the holding in *Williamsport Rail* to be in conflict with the *Cambria Iron* case. That latter case held that a corporation not actually engaged in manufacturing is still entitled to the exemption if its capital is invested in a manufacturing plant which is used in the manufacturing business of another corporation.

As previously noted, the statutory language can be reasonably construed to authorize this exception to the general rule that a corporation must be actually engaged in manufacturing to be entitled to the exemption. But the ownership of raw materials which are converted by another into a manufactured product is far different from the ownership of a manufacturing plant used by another to produce a manufactured product. In the latter instance, the owner of the plant has invested its capital in such a dedicated and permanent way for the furtherance of manufacturing that the Legislature, in its sole discretion, could conclude that such is the equivalent of "manufacturing."

The appellant challenges the validity of the *Williamsport Rail* case on the basis of an amendment to the statute as applied to foreign corporations. The franchise tax provisions of the Act of 1889, P. L. 420, were added in 1935 at the same time as the manufacturing exemption with respect to domestic corporations was suspended. Consequently, no language pertaining to the exemption was incorporated in the franchise tax. The language granting the exemption to foreign corporations as well as domestic corporations was added in 1943 and was designed to accommodate to the particular features of the franchise tax. That language has remained basically unchanged.

Thus, there has been no amendment removing the requirement that the property be actually used in the manufacturing business of the taxpayer.

Appellant argues that the Act of 1889, P. L. 420 should be construed so as to grant the exemption to a corporation even though it performs no manufacturing. In this connection, our attention is called to the situation where a corporation which leases a manufacturing plant to another for use in manufacturing is still entitled to the exemption. As noted above, this result is specifically dictated by the Act of 1901. While we are mindful that certain language in *Commonwealth v. Jeca Corp.*, 81 Dauphin 36 (1963), indicates that the Act of 1889, itself might produce such a result, the specific language of the Act of 1901 clearly governs the matter and makes it unnecessary for us to so construe the Act of 1889.

Appellant also argues that its business and that of its subsidiary corporation is an integrated one and that if it were conducted by one corporation, the exemption would apply with respect to the tangible property and wages and salaries involved here. While this statement, indeed, is true, it has little bearing on the issue involved in this case. Our reports contain many cases where corporations have been denied the manufacturing exemption even though the same assets, in the hands of a manufacturer, would have been exempt.

The principle underlying these cases was stated by the Superior Court in *Hazen Engineering Co. v. Pittsburgh*, 189 Pa. Superior Ct. 531, 540, 151 A. 2d 855, 859 (1959), where the following language appears:

"Doing the same thing by different people under different circumstances has been held to be manufacturing in one case and not manufacturing in the other."

Appellant, for reasons best known to itself, has elected to divide the enterprise into two separate, legal entities, one engaged in manufacturing and one engaged in owning and selling. Having done this, appellant cannot now insist that the Commonwealth ig-

nore the legal entities set up by appellant so as to find appellant to be something that it is not. See *Tax Review Board v. Automatic Plating Co.*, 423 Pa. 283, 223 A. 2d 854 (1966) ; *Shelburne Sportswear, Inc. v. Philadelphia*, 422 Pa. 199, 220 A. 2d 798 (1966).

The result we reach today maintains harmony between the capital stock tax manufacturing exemption and the franchise tax manufacturing exemption. Generally, in each instance, the taxpayer must actually be *engaged* in manufacturing in Pennsylvania to qualify for the exemption.

Judgment affirmed.

Mr. Justice MUSMANNO did not participate in the decision of this case.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

Unfortunately I am unable to join the majority opinion.

To me, even a cursory reading of the applicable statute reveals that Weldon, N.Y., is entitled to the exemption. The franchise tax in question [Act of June 1, 1889, P. L. 420, §21, as amended, 72 P.S. §1871(b)] includes in a foreign corporation's taxable property "the value of the taxpayer's tangible property not actually and exclusively used in manufacturing, situated within the Commonwealth. . . ." Weldon, N. Y., is seeking to exclude from its taxable property the average value of the raw material, work in process and finished inventory located at its subsidiary's plant in Pennsylvania. There is no question that these items are (1) tangible property (2) actually and exclusively used in manufacturing and (3) located in Pennsylvania. While it is true that Weldon, N.Y., does not manufacture anything in Pennsylvania, there is nothing in the statute

requiring a corporation to be engaged in manufacturing in Pennsylvania to qualify for the exemption. The only requirement is that the corporation own property in Pennsylvania which is used in manufacturing. Weldon, N.Y., meets this requirement.

The majority has read an exception into the statute which the language itself does not contain. Can the majority justify their exception as being an indication of the true legislative intent? "The purpose of granting the exemption in the Act of 1889 seems to be to encourage the investment and use of capital in manufacturing enterprises so that Pennsylvania's resources might be developed, its people given employment and the public welfare advanced." *Commonwealth v. Jeca Corp.*, 31 Pa. D. & C. 2d 759, 766 (1963). "Obviously, the purpose of the manufacturing exemption is to provide incentives to business enterprise to establish and maintain manufacturing facilities in this Commonwealth." *Commonwealth v. Twitchell*, 31 Pa. D. & C. 2d 226, 240 (1963). The Commonwealth argues that these policy reasons do not favor the exemption because Weldon, N.Y., does not create employment in Pennsylvania. This contention ignores the simple facts. The number of people the Pennsylvania subsidiary will employ at a given time depends on the amount of raw material which it receives from Weldon, N.Y. If the subsidiary receives nothing from Weldon, N.Y. (perhaps because of unfavorable tax incentives), Pennsylvania citizens who now work for the subsidiary will be laid off. All parties agree that if Weldon, N.Y., actually owned and operated the plant in Pennsylvania, it would receive the exemption. I cannot understand how this difference in result squares with the legislative intent. Certainly, the language of the statute does not say that if a corporation actually manufactures in Pennsylvania it will receive the exemption, whereas if it does the same work through a wholly-

owned subsidiary, it will not receive the exemption. Whether Weldon, N.Y., or Weldon, Pa., actually operates the plant should have no effect on the employment created, for the same number of shirts will be manufactured regardless of who runs the plant. If the purpose of the statute is to increase manufacturing in Pennsylvania, that purpose is realized if Weldon, N.Y., sends raw material to its wholly-owned subsidiary in Pennsylvania to be manufactured.

The majority seems to reach its result solely on the strength of *Commonwealth v. Williamsport Rail Co.*, 18 Dauphin 189, aff'd per curiam, 250 Pa. 596, 95 A. 795 (1915). On the surface the facts of both cases appear identical. What the majority does not mention, however, is that there is a significant difference in the applicable statutes. The Act of June 8, 1893, P. L. 353 states: "But every manufacturing corporation, limited partnership or joint stock association shall pay the State tax of five mills herein provided upon such proportion of its capital stock as may be invested in any property or business not strictly incident or appurtenant to *its* manufacturing business . . ." (emphasis added). The taxpayer in *Williamsport Rail* was not involved in manufacturing in Pennsylvania; it did not have a manufacturing business in Pennsylvania. Therefore, the property it was attempting to exempt could not possibly be "incident or appurtenant to *its* manufacturing business" in Pennsylvania. The statute taxing foreign corporations today has been amended to remove the requirement that the property be actually used in the manufacturing business of the taxpayer. The statute merely says "actually and exclusively used in manufacturing" in Pennsylvania. Under this statute Williamsport Rail Company would be entitled to the exemption, but not under the statute controlling when *Williamsport Rail* was decided in 1915. In short, *Williamsport Rail* is

no longer cogent authority because of a significant change in the applicable statute.

There is a well-recognized rule that a taxpayer will not lose the manufacturing exemption if he leases a plant to a lessee who does engage in manufacturing. This rule has been codified in the Act of July 11, 1901, P. L. 668, §1, 72 P.S. §1893. Both the court below and the Commonwealth claim that this rule is completely statutory in nature. In a case decided the year this statute became law, the Dauphin County Court of Common Pleas held that this rule should be read into the Act of 1889 itself and that, in reality, the Act of 1901 was unnecessary. See: *Commonwealth v. Cambria Iron Co.*, 5 Dauphin 101 (1902). In effect, then, this leasing rule is derived from the same language which controls our case.

The majority, apparently realizing that the court below had misunderstood the derivation of this rule, attempts instead to distinguish the lease situation from our case: "But the ownership of raw materials which are converted by another into a manufactured product is far different from the ownership of a manufacturing plant used by another to produce a manufactured product. In the latter instance, the owner of the plant has invested its capital in such a dedicated and permanent way for the furtherance of manufacturing that the Legislature, in its sole discretion, could conclude that such is the equivalent of 'manufacturing.'" First, there is nothing in the Act of 1893 or its successors which indicates that the legislature made the distinction which the majority now urges. As indicated above, the leasing rule is derived from the Act of 1893, which also controls our case, and not from the Act of 1901. Second, the majority has failed to convince me that there is a policy distinction between the two situations which would dictate a different result. The majority is willing to give the manufacturing exemp-

tion to an investor who builds a plant and leases it. The only connection this individual has with manufacturing is that he built a plant for investment purposes rather than an apartment house or office building and he is not particularly concerned if he leases his plant to a company which employs 50 or 500 employees in their manufacturing work. The impact such an individual has on manufacturing is indirect, at best. The majority is not willing, on the other hand, to give the exemption to a parent company which has a very direct influence on the amount of manufacturing which is carried on by its subsidiary which operates a plant in Pennsylvania. To me it seems clear that Weldon, N.Y., has at least as great, if not greater, an effect on manufacturing in Pennsylvania as the investor-leasor.

The majority has chosen to ignore the most recent case construing this particular area of the franchise tax. *Commonwealth v. Jeca Corp.*, 31 Pa. D. & C. 2d 759 (1963) also involved a leasing situation. Jeca bought a factory for the purpose of leasing it to a manufacturing corporation. It leased the factory to a company engaged solely in manufacturing. Jeca did not manufacture anything itself, but it did own 60% of the company which did do the manufacturing. In opposing Jeca's claim for the manufacturing exemption, the Commonwealth argued (1) that Jeca never manufactured anything and (2) that the Act of 1901 only applies if the company now leasing the factory had at some time engaged in manufacturing in the plant. As to the first argument, the court held, "The statute does not require that the taxpayer be engaged in manufacturing. . . . It is the use to which the property is put which is determinative of whether or not the property is to be relieved from the capital stock tax." (31 Pa. D. & C. 2d at 764). This language is broad enough to cover the Weldon, N.Y., situation also. As to the second argument, the court held that *Cambria Iron* was con-

trolling and that that case did not hold that the taxpayer must have used the plant for manufacturing purposes at some time in the past in order to qualify for the exemption when it leased the plant.

The court in *Jeca* further said: "The General Assembly has relieved from tax neither more nor less than is necessary to encourage manufacturing by relieving from the tax the property employed in manufacturing rather than the corporation engaged in manufacturing." (31 Pa. D. & C. 2d at 766). The court in *Jeca*, in my opinion, correctly observes that the emphasis should be placed on the property and not on the corporate structure of the manufacturing unit. There is no disagreement in our case that the property in question is used in manufacturing. "By Act of June 8, 1893, P. L. 355, the relieving proviso was changed to its present form so that it now no longer relieves the corporation actually carrying on manufacturing, but it relieves the property actually employed in manufacturing. The history of this legislative change clearly indicates that it was the legislative intent not to have the relieving proviso related to what the owner of the property was doing in the year of taxation. . . ." (31 Pa. D. & C. 2d at 766-67).

In conclusion, I submit that neither the statutory language, legislative intent, nor controlling case law supports the majority's position.

Mr. Justice EAGEN joins in this dissent.