## Commonwealth of Pennsylvania *v.* Olan Mills, Inc. of Ohio.

Argued December 7, 1970, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER, and BARBIERI (who has since been appointed to the Supreme Court of Pennsylvania and did not participate in the decision).

*Arthur Berman,* with him *Berman and Boswell,* for appellant.

*Edward T. Baker,* Deputy Attorney General, with him *Fred Speaker,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, February 11, 1971:

This tax appeal presents the Court with yet another factual situation to be evaluated in order to determine what is "manufacturing" within the meaning of the Tax Act of 1963 for Education[1] which exempts manufacturing activities from taxation. The two issues raised in this appeal are whether the use of cameras and films in connection with the making of custommade portraits is included in the phrase "manufacture of personal property" as defined in the Act, and, if so, whether the manufacturing exclusion applies where the production of the portrait is actually done outside Pennsylvania.

The parties have stipulated of record certain facts which we adopt and which may be summarized as follows:

Olan Mills, Inc. of Ohio, appellant, a Tennessee corporation, is engaged in making and selling portraits in 21 states. It solicits business by telephone and personal contacts made by traveling sales personnel. Appellant has one permanent studio in Harrisburg, Pennsylvania, but in all other locations in Pennsylvania the customers go to hotels and other similar places for picture sittings. Business is solicited on the representation that appellant's photographs are custom-made. Following the taking of pictures in Pennsylvania with a special portrait camera and unexposed film, the then exposed film is sent by mail to appellant's plant in Springfield, Ohio. The film is placed in a chemical de-

---

[1] Act of May 29, 1963, P. L. 49, 72 P.S. §3403-1 et seq.

veloping solution, resulting in the formation of negatives. Light is then transmitted through each negative onto sensitized sheets of paper, resulting in what are commonly known as proofs. The proofs are then sent to appellant's sales personnel whereupon the customer selects the desired proof which in turn is then returned to appellant's Ohio plant and matched with the negative from which the proof was made. Light is again transmitted through the negative and the image is transmitted onto a sensitized sheet of paper which is then immersed in a developing solution, resulting in a permanent print which is then washed and dried. Appellant employs 75 to 85 artists to retouch the negatives and prints and utilizes a permanent finishing technique of placing oil and water colors on the individual portraits followed by baking them in an oven. After the portrait is custom-made, it is sent to the sales representative who completes the sale by delivering it to the customer at which time final payment is made.

Here the alleged deficiency in use tax, for the period from November 1, 1965, to October 1, 1966, amounts to $871.58 which is assessed in the amount of $49.22 on camera equipment and $822.36 on film purchased and used in Pennsylvania.

The Act, by Section 201(b), 72 P.S. §3403-201, imposes a tax "upon the use . . . of tangible personal property purchased at retail," the tax to be paid to the Commonwealth by the persons who make such use. The Act, in defining "use" of tangible personal property, specifically excludes the "use . . . of tangible personal property including . . . equipment . . . and supplies . . . in any of the operations of—(i) The manufacture of personal property . . ." Section 2(n)(4)(c)(i), 72 P.S. §3403-2. The first question then is whether appellant's cameras and films are employed in the "manufacture of personal property" as that phrase is defined in the Act.

Section 2(c), 72 P.S. §3403-2(c), defines "manufacture" as: "The performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any personal property in a form, composition or character different from that in which it is acquired whether for sale or use by the manufacturer, and shall include, but not be limited to—(1) Every operation commencing with the first production stage and ending with the completion of personal property having the physical qualities . . . which it has when transferred by the manufacturer to another . . ."

In *Commonwealth v. Sitkin's Junk Co.,* 412 Pa. 132, 194 A. 2d 199 (1963), the Supreme Court said: "In its definition of 'manufacture', the Act (Section 2(c)) emphasizes two criteria, i.e., the *type* of the activity and the *result* of that activity. To constitute 'manufacture', *first,* the *type* of the activity must fall into one or more categories, i.e., 'manufacturing, fabricating, compounding, processing or other operations' and *second,* as a *result* of one or more types of the prescribed activities, the personal property must be placed 'in a form, composition or character *different* from that in which [such personal property]' was acquired." 412 Pa. at 138, 194 A. 2d at 202.

The application of this dual test to the instant case leads us to the conclusion that appellant's cameras and film are used in the manufacture of personal property in accordance with the Act's definition because their use in Pennsylvania qualifies under "other operations" since unexposed film is transformed to a custom-made portrait. We reach this conclusion after reading *Sitkin's Junk Co., supra,* where the ejusdem generis rule of interpretation was rejected and the dictionary definition of "operation" was adopted as meaning "the action of making or producing something." Such a broad

definition would certainly include the appellant's activities in taking the film from the camera, following a customer sitting, and making something, to wit, a portrait. Also, when we consider the result of appellant's activity, we readily see that a product does emerge which is different in form, composition or character from that with which the operation began. Starting with a camera and unexposed film and ending with a custom-made portrait is a result of the appellant's activities which meets the second criterion of the definition of "manufacture".

Having reached the conclusion that cameras and films purchased by appellant are used in the "manufacture of personal property", as those words are defined by the statute, we must now consider the second issue as to whether the manufacturing exclusion of the Act applies where all the steps in the production of the actual portrait are taken outside Pennsylvania.

The stipulation of facts states that the only steps in the custom portrait operation which are conducted within the Commonwealth of Pennsylvania are the insertion of the unexposed film into the camera and the opening of the shutter to allow light to be transmitted onto the film, thereby producing an image of the object being photographed.

It is clear from the stipulation of facts that the entire production of the custom-made portrait is performed at appellant's plant in Ohio. All that is done in Pennsylvania is the taking of the picture. It is after the arrival of the film in Springfield, Ohio, that the actual "first production stage" of the portrait begins and the various steps are taken by appellant's skilled employees that result in the final product.

The reason for providing a manufacturing exclusion was undoubtedly to promote manufacturing within the Commonwealth of Pennsylvania and, as a re-

236

ward, to give those engaged in manufacturing in the Commonwealth a competitive advantage.

Our careful consideration of the statute convinces us that the Legislature intended the manufacturing exclusion to apply only to that manufacturing in Pennsylvania which in some manner benefits the Commonwealth (for example, more jobs for Pennsylvanians; new source of school, property, and corporate income taxes) and thereby deserves the reward of exemption from the use tax. It was not the Legislature's purpose to create a tax loophole which out-of-state corporations could exploit by using Pennsylvania merely as a source of benefit without simultaneously accepting the burdens which are only a fair incident of doing business within a state.

Therefore, even though we believe the picture-taking activity in Pennsylvania literally falls within the "use . . . of tangible personal property including . . . equipment . . . and supplies . . . in any of the operations of— (i) The manufacture of personal property . . .", Section 2(n)(4)(c)(i), 72 P.S. §3403-2, and even though such activity does literally fall within "other operations", Section 2(c), 72 P.S. §3403-2(c), and within the dictionary definition of "operation" as espoused in *Sitkin's Junk Co.*, *supra*, we think that appellant's Pennsylvania picture-taking activity rightfully does not deserve the exclusion reward.

The Supreme Court of Alabama came to a like conclusion after considering a statute similar to our Act. *State v. Olan Mills, Incorporated of Tennessee*, 258 Ala. 303, 63 So. 2d 796 (1953). Similarly, our own Supreme Court has reached a like conclusion by deciding that a foreign corporation, subject to the franchise tax, is not entitled to the manufacturing exemption when the corporation did not actually engage in manufacturing in Pennsylvania. *Commonwealth v. Weldon Pajamas, Inc.*, 432 Pa. 481, 248 A. 2d 204 (1968).

For the foregoing reasons, we make the following

### CONCLUSIONS OF LAW

1. Appellant, a Tennessee corporation, is subject to use tax liability under the Act of May 29, 1963, P. L. 49, as amended, 72 P.S. §3403-1 et seq.

2. The use by appellant of cameras and film in Pennsylvania is not excluded for purposes of determining tax liability.

3. Resettlement of appellant's use tax for the period from November 1, 1965, to October 1, 1966, was lawful and proper and the appeal should be dismissed.

4. Judgment should be entered in favor of the Commonwealth and against Olan Mills, Inc. of Ohio in the amount of $871.58, plus appropriate statutory interest.

### ORDER

Accordingly, we enter the following

Now, this 11th day of February, 1971, the appeal is hereby dismissed and judgment is directed to be entered in favor of the Commonwealth and against Olan Mills, Inc. of Ohio in the amount of $871.58 together with interest and costs according to law unless exceptions be filed hereto within thirty (30) days.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I concur in the initial conclusion reached by the majority that "the picture-taking activity in Pennsylvania literally falls within the 'use . . . of tangible personal property including . . . equipment . . . and supplies . . . in any of the operations of—(i) The manufacture of personal property . . .', Section 2(n)(4)(c)(i), 72 P.S. §3403-2" and *Commonwealth v. Sitkin's Junk Co.*, 412 Pa. 132, 194 A. 2d 199 (1963). How-

ever, I believe that this compliance with the legislative requisites for the manufacturing exclusion *entitles* Olan Mills to its benefits.

The majority has expanded the requirements set forth in the statute by holding that at least a substantial portion if not all of the total manufacturing operation must be situated in Pennsylvania to "deserve the exclusion reward" on any of the manufacturing operations. There is no doubt that if Olan Mills had completed all production phases of its operations in Pennsylvania, the majority would have held the very steps in question to be the proper subjects of the manufacturing exclusion. However, in the case before us, we have found that all the "production stages" of the operation are completed outside of Pennsylvania. The majority has, therefore, held that absent some or all of these "production stages" none of the nonproduction stages of the manufacturing operation qualify for the manufacturing exclusion normally accorded them.

In reaching this conclusion, the majority relies heavily on their interpretation of the legislative intent in enacting the exclusion. I agree that "the reason for providing a manufacturing exclusion was undoubtedly to promote manufacturing within the Commonwealth of Pennsylvania and, as a reward, to give those engaged in manufacturing in the Commonwealth a competitive advantage." I must also agree that this "reward" was extended to manufacturers both in gratitude for and in the promotion of benefits for the Commonwealth in the form of jobs and revenue. However, I cannot agree with the conclusion that these goals *only* apply when the "production stages" are located within the state. Nor can I agree with the conclusion that the nonproduction stage manufacturing operations of Olan Mills situated in this state have not provided the benefits to the Commonwealth.

To the contrary, Olan Mills has set up one permanent studio in Pennsylvania which necessarily provides employment and revenue for that immediate area. In addition, it employs traveling photographers to work within Pennsylvania. Finally, by performing the stage in question within the state, Olan Mills has made the sale of its finished product to its Pennsylvania customers subject to the Pennsylvania sales tax. It seems clear to me that the Olan Mills operation is positive proof that any manufacturing operation, regardless of size, benefits the Commonwealth. I believe that the Legislature, for this reason, intended the manufacturing exemption to be an inducement for the location of *any* manufacturing operation, whether in *whole or in part*, in this state.

This Court must realize that when it requires that the total operation which locates in Pennsylvania must be of some substantial magnitude in order to benefit from the exclusion, it jeopardizes the Commonwealth's efforts to induce the development of smaller business operations. The net result is to contradict the very purposes which gave birth to the exclusion.

In addition to holding that Olan Mills does not provide the Commonwealth with jobs or revenue, the majority has also erred in relying upon the authority of *Commonwealth v. Weldon Pajamas, Inc.*, 432 Pa. 481, 248 A. 2d 204 (1968). In that case, a foreign company retained ownership of certain materials while a subsidiary Pennsylvania company used them in manufacturing. The Court held that the foreign company did not use the goods in manufacturing since it did not itself conduct the operation. This case in no way reflects upon the question of whether a foreign manufacturer is entitled to an exclusion for the portion of *his manufacturing operation he* performs in Pennsylvania.

Since I agree with the majority that the literal answer to this question is that the exclusion does apply, and since in my view this interpretation of the statute agrees with the purpose for its enactment, I would sustain the appeal.

Judge MANDERINO joins in the dissent.