Commonwealth *v.* Olan Mills, Inc. of Ohio,
Appellant.

Argued May 22, 1973. Before JONES, C. J., EAGEN,
O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

*Arthur Berman,* with him *Berman and Boswell,* for appellant.

*Edward T. Baker,* Deputy Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, March 25, 1974:

This is an appeal from an order of the Commonwealth Court dismissing appellant's appeal from the decision of the Board of Finance and Revenue refusing to strike off a use tax assessment, and entering judgment in favor of the Commonwealth and against appellant in the amount of $871.00, with interest. The appeal was heard by the Commonwealth Court on a stipulation of facts, which is accurately summarized in the majority opinion:

"Olan Mills, Inc. of Ohio, appellant, a Tennessee corporation, is engaged in making and selling portraits in 21 states. It solicits business by telephone and personal contacts made by travelling sales personnel. Appellant has one permanent studio in Harrisburg, Pennsylvania, but in all other locations in Pennsylvania the customers go to hotels and other similar places for picture sittings. Business is solicited on the representation that appellant's photographs are custom-made. Following the taking of pictures in Pennsylvania with a special portrait camera and unexposed film, the then exposed film is sent by mail to appellant's plant in Springfield, Ohio. The film is placed in a chemical developing solution, resulting in the formation of nega-

tives. Light is then transmitted through each negative onto sensitized sheets of paper, resulting in what are commonly known as proofs. The proofs are then sent to appellant's sales personnel whereupon the customer selects the desired proof which in turn is then returned to appellant's Ohio plant and matched with the negative from which the proof was made. Light is again transmitted through the negative and the image is transmitted onto a sensitized sheet of paper which is then immerced [sic] in a developing solution, resulting in a permanent print which is then washed and dried. Appellant employs 75 to 85 artists to retouch the negatives and prints and utilizes a permanent finishing technique of placing oil and water colors on the individual portraits followed by baking them in an oven. After the portrait is custom-made, it is sent to the sales representative who completes the sale by delivering it to the customer at which time final payment is made.

"Here the alleged deficiency in use tax, for the period from November 1, 1965, to October 1, 1966, amounts to $871.58 which is assessed in the amount of $49.22 on camera equipment and $822.36 on film purchased and used in Pennsylvania."

The Tax Act of 1963 for Education[1] [the Act] imposes a tax "upon the use . . . within this Commonwealth of tangible personal property purchased at retail . . . which tax shall be paid to the Commonwealth by the person who makes such use."[2] In defining the "use" of tangible personal property, the Act specifically excludes the "use . . . of tangible personal property including . . . equipment . . . and supplies in any of the operations of—(i) The manufacture of personal prop-

---

[1] Act of May 29, 1963, P.L. 49, 72 P.S. §3403-1 et seq.

[2] 72 P.S. §3403-201. The scheme and function of the use tax and its interrelation with the sales tax have been most recently set forth in our opinion in *Com. v. J. W. Thompson Co.*, 450 Pa. 5, 297 A. 2d 109 (1972).

erty."[3] "Manufacture" is, in turn, defined as: "The performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any personal property in a form, composition or character different from that in which it is acquired whether for sale or use by the manufacturer. . . ."[4]

The Commonwealth Court held (1) that the making of custom-made portraits constitutes manufacturing within the definition of the Act; (2) that the cameras and film are used in one of the operations of the manufacture of personal property; (3) that use of the cameras and film is nevertheless taxable because all of the "production stages" in the manufacture of the custom-made portraits take place outside the Commonwealth; and (4) that the tax is not unconstitutional. *Commonwealth v. Olan Mills Inc. of Ohio,* 1 Pa. Commonwealth Ct. 230 (1971), exceptions dismissed, 5 Pa. Commonwealth Ct. 548 (1972).

We agree with the first two holdings of the court below, but conclude on the basis of those findings, as did the dissenters in the Commonwealth Court,[5] that the Department of Revenue may not assess a tax on the use of the cameras and film in the manufacture of custom-made portraits. Accordingly, we reverse the judgment below without reaching the constitutional question.

In *Commonwealth v. Sitkin's Junk Co.,* 412 Pa. 132, 194 A. 2d 199 (1963), this Court, speaking through Mr. Justice (now Chief Justice) JONES, said: "In its definition of 'manufacture', the Act (Section 2(c)) emphasizes two criteria, i.e., the *type* of the activity and

---

[3] 72 P.S. §3403-2(n)(4)(c).

[4] 72 P.S. §3403-2(c).

[5] The dissenting opinion was filed by Judge CRUMLISH; Judge (now Justice) MANDERINO joined.

the *result* of that activity. To constitute "manufacture", *first,* the *type* of the activity must fall into one or more categories, i.e., "manufacturing, fabricating, compounding, processing or other operations" and *second,* as a *result* of one or more types of the prescribed activities, the personal property must be placed 'in a form, composition or character *different* from that in which [such personal property]' was acquired." 412 Pa. at 138, 194 A. 2d at 202.

The application of this dual test to the facts of the case at bar leads us to the conclusion that appellant's cameras and film are used in the manufacture of personal property in accordance with the Act's definition. In *Sitkin's Junk Co., supra,* we found the *ejusdem generis* rule of interpretation inapplicable to the language of this section and adopted the dictionary definition of "operation", i.e., "the action of making or producing something". The Oxford English Dictionary, Vol. VII, p. 145. Such a broad definition would certainly encompass appellant's activities in the instant case. Appellant is engaged in the business of "making or producing" custom-made portraits. An essential step in that process is the "making or producing" of a negative from which the print (which ultimately becomes the finished portrait) is made. The making of the negative in turn involves a series of chemical reactions in the coating of the film, the first of which is caused by the in-camera exposure of the film to light, the "taking" of the picture. Also, when we consider the *result* of appellant's activity, we readily see that personal property is placed "in a form, composition or character different from that in which it is acquired" by appellant. The sensitized paper, oil and water colors are changed into a portrait. The unexposed film, when developed, becomes the negative. In both instances, the composition and character of the property is "different from that in which it is acquired".

It matters not, in our view, that the particular operation here in question, the exposure of the film, results in a change in the composition or character of property which does not itself become an integral part of the finished portrait. The Act specifically defines "manufacture" as "the performance of . . . operations, engaged in as a business, which place *any* personal property in a form, composition or character different from that in which it is acquired *whether for sale or use by the manufacturer.*" (Emphasis supplied.) The making of the negative is an operation which is an essential part of appellant's business and involves a change in the composition or character of the film *for use* by the manufacturer in making the portrait. The process is analogous to the making of a cast or mold in which an object is shaped. The mold is the "negative" of the product to come, and the machines and materials used to make the mold are as much a part of the manufacturing process as those used to make the product itself.

We therefore conclude, as did the Commonwealth Court, that appellant's cameras and film are used directly in one of the operations of the manufacture of personal property. It follows that where, as here, the taxpayer's activity fits within the statutory definition of "manufacture", the use of equipment and supplies in such activity is necessarily excluded from the statutory definition of "use", and the Department of Revenue is without authority to assess a tax on such use. We are unable to agree, however, with the holding of the majority below that, although use of the property in question is within the manufacturing exclusion of the statute, such use may nevertheless be taxed because other steps in the manufacturing process (the "production stages") take place outside the Commonwealth. We can find nothing in the statute to indicate that, unless a certain number or a certain type of the operations in the manufacturing process are performed within Penn-

sylvania, the property used in those operations that are performed within the Commonwealth may be taxed. To the contrary, the Act provides that the "use of . . . equipment . . . and supplies . . . in *any of the operations* of (i) the manufacture of personal property" is nontaxable. (Emphasis supplied.) "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."[6] Once the Commonwealth Court had correctly concluded that property of appellant was used in a manufacturing operation, the Act was clear and free from all ambiguity as to the exclusion of such use from the tax.[7]

---

[6] Statutory Construction Act of 1972, 1 Pa. S. §1921(b).

[7] The reliance of the dissent on *Commonwealth v. Deitch Co.*, 449 Pa. 88, 295 A. 2d 834 (1972), *Commonwealth v. Berlo Vending Co.*, 415 Pa. 101, 202 A. 2d 94 (1964) and *Commonwealth v. Weldon Pajamas, Inc.*, 432 Pa. 481, 248 A. 2d 204 (1968) is misplaced. None of those cases involved the Tax Act of 1963 for Education (i.e., the Sales and Use Tax Act), with which we are here concerned, or the definition of "manufacture" set forth in that act. They are not even cited by the Commonwealth. The dissenting opinion is mistaken in asserting that "the principles enunciated in [*Deitch*] and [*Berlo Vending*] control this case . . . ."

In both *Deitch* and *Berlo Vending*, as well as in *Weldon Pajamas*, the issue was whether the taxpayer was entitled to the manufacturing *exemption* of the Capital Stock Tax Act of June 1, 1889, P.L. 420, as amended, 72 P.S. §1871. This is a different issue from that in this case, which involves the manufacturing *exclusion* in the Sales and Use Tax Act. The principles enunciated in *Deitch* and *Berlo*, which are referred to but not elucidated in the dissenting opinion, are: (1) "Since the appellant and its property are within the general language of the act which imposes the capital stock tax, the provisions relied on to establish the claimed *exemptions* must be strictly construed. Commonwealth v. Berlo Vending Co., supra." *Commonwealth v. Deitch Co.*, 449 Pa. at 95. (Emphasis supplied.) and (2) "The element of difficulty in this and other cases dealing with the Capital Stock Tax manufacturing exemption arises from the *absence of any statutory definition* of the term 'manufacturing'.

The judgment of the court below is reversed.

"This definitional vacuum has been filled by a *judicial definition* of the term . . . ." *Commonwealth v. Deitch Co.*, 449 Pa. at 92. (Emphasis supplied.)

" 'Manufacturing' as used in a legislative enactment is given its ordinary and general meaning." *Commonwealth v. Berlo Vending Co.*, 415 Pa. at 104.

Neither of these principles is applicable to the question of what is "manufacture" under the definition of that term in the Sales and Use Tax Act.

As noted in the main text, that Act, in defining those sales and uses upon which the tax is imposed, specifically *excludes* from the definition of the general term "use", the "use . . . of tangible personal property . . . in any of the operations of the manufacture of personal property". The issue in this case, therefore, is not whether the taxpayer qualifies for an exemption, but the more basic question of whether the taxpayer or his property is within the general language of the statute imposing the tax. In answering this question, the language of the taxing statute is to be strictly construed against the Commonwealth, not against the taxpayer. 1 Pa. S. §1928(b)(3) and (4) ; *Commonwealth v. Sitkin's Junk Co.*, 412 Pa. 132 at 141-42, 194 A. 2d 199 (1963) ; *Commonwealth v. Rieck Inv. Corp.*, 419 Pa. 52, 213 A. 2d 277 (1965).

As for the second of the *Deitch-Berlo* principles, as was so carefully explained in this Court's unanimous decision in *Commonwealth v. Sitkin's Junk Co.*, *supra*, at 136-38:

"[I]n the statutes which antedated the [Sales and Use Tax] Act . . . generally there was no definition of 'manufacture' and the courts resorted to the popular concept of the meaning of that term. In the Act now under construction the legislature has seen fit to define at some length the term 'manufacture'.

. . . .

"We have long held that where a statute contains its own definition, the meaning of the terms as defined at common law or as constructed under prior statutes is not controlling. [Citing cases.] By specifically defining 'manufacture', the legislature indicated its intent that 'manufacture' be construed in accordance with the statutory language and that the construction of such word was not to be controlled by prior judicial construction of such word under prior statutes."

It is precisely because different principles controlled the two cases that "the compression of old automobiles into blocks of steel"

Mr. Justice MANDERINO took no part in the consideration or decision of this case.

---

was held in *Sitkin's Junk, supra,* to be within the statutory definition of "manufacture" in the Sales and Use Tax Act while the identical activity was held in *Deitch* not to be "manufacturing" within the judicial definition developed under the Capital Stock Tax Act. As Mr. Justice EAGEN pointed out, speaking for the Court in *Deitch*: "Clearly the historical definition of 'manufacture' was read out of the sales tax as inapplicable. Our opinion in Sitkin's also gave a lucid indication that the two definitions differed in the respect that the sales tax definition was a *much more inclusive term.*" 449 Pa. at 97. (Emphasis added.)

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Anyone who ever snapped the shutter of a camera would be surprised indeed to learn that, in the majority's view, he is engaged in "manufacturing." The majority reaches its result by holding the mere exposure of film to be "manufacturing." Accordingly, the Commonwealth by today's decision is precluded from imposing tax[1] on the use by appellant within this state of film and specialized cameras.

I dissent and would affirm the order of the Commonwealth Court. In my view, the principles enunciated in *Commonwealth v. Deitch Co.,* 449 Pa. 88, 295 A.2d 834 (1972), and *Commonwealth v. Berlo Vending Co.,* 415 Pa. 101, 202 A.2d 94 (1964), control this case and compel a result contrary to that reached by the majority.

In *Deitch* this Court held that "the compression of old automobiles into blocks of steel," 449 Pa. at 97, 295 A.2d at 839, did not constitute manufacturing. This Court in *Berlo Vending,* held that the "popping" of corn was not manufacturing. Again, I do not see how the ma-

---

[1] Tax Act of 1963 for Education, Act of May 29, 1963, P.L. 49, 72 P.S. §§ 3403-1 to -205 (1964), as amended, 72 P.S. §§ 7101-7282 (Supp. 1973).

jority can conclude that the simple act of snapping a shutter is "manufacturing."

Even were appellant's operation viewed as a whole to be considered manufacturing, appellant would nevertheless be foreclosed, by virtue of *Commonwealth v. Weldon Pajamas, Inc.*, 432 Pa. 481, 248 A.2d 204 (1968), from claiming the manufacturing exclusion. See *Commonwealth v. Olan Mills, Inc.*, 1 Pa. Commonwealth Ct. 230, 274 A.2d 272 (1971). Appellant's entire process of developing exposed film, making proofs and prints from negatives, retouching prints, placing oil and water colors on prints, and baking the final product in an oven takes place outside of this Commonwealth. This Court was of the view in *Weldon Pajamas* that, except in a single circumstance[2] not relevant here, "[h]istorically, the manufacturing exemption . . . has been reserved to those corporations organized for manufacturing purposes and *actually engaged* in manufacturing in Pennsylvania." Id. at 484, 248 A.2d at 205.

What the majority unfortunately overlooks is the legislative policy behind the exemption or exclusion of manufacturing from tax liability. The sole reason for the legislative choice to confer these tax benefits is to stimulate and encourage manufacturing in Pennsylvania. Appellant's manufacturing, as the Commonwealth Court correctly held, took place outside of Pennsylvania; the reason for the exclusion (exemption) does not exist; the tax was here properly assessed.

The majority seeks to buttress its conclusion by gnomic references to the Statutory Construction Act. For my part, the only canon of statutory construction applicable here is that which instructs the court not to

---

[2] "The exception to this rule relates to a corporation organized for manufacturing purposes and owning a manufacturing plant which is leased to another corporation which is actually engaged in manufacturing." *Commonwealth v. Weldon Pajamas, Inc.*, 432 Pa. 481, 484, 248 A.2d 204, 205 (1968).

reach an absurd result. 1 Pa.S. § 1901 (Special Pamphlet, 1973).

Only by ignoring this canon can the absurd conclusion that the snapping of a shutter of a camera is manufacturing be reached. If, as the majority believes, the mere snapping of a camera's shutter is manufacturing, what then is not?