Commonwealth of Pennsylvania, Department of Revenue v. Air Products & Chemicals, Inc., Appellant.

Argued September 8, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Samuel C. Harry,* with him, of counsel, *Morgan, Lewis & Bockius,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, with him *Donald J. Murphy,* Deputy Attorney General, and *Paul S. Roeder,* Deputy Attorney General, for appellee.

OPINION BY JUDGE MENCER, November 16, 1976:

Air Products and Chemicals, Inc. (Air Products) appeals from an order of the Board of Finance and Revenue (Board) sustaining an order of the sales-tax Board of Review, which denied Air Products' petition for a refund of use taxes paid between January 1967 and January 1970.[1] A partial stipulation of facts was filed by the parties, and additional testimony was taken at a hearing in this Court before Judge ROGERS.

Under Section 1104 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §1104, appeals from the Board are heard de novo. We adopt, with one minor alteration,[2] the relevant and material facts in the partial stipulation as our findings of fact.

---

[1] Individual petitions for refund were filed by Air Products ($31,091.77) and its related companies, C. C. Leasing Company ($8,225.94) and The Commonwealth Plan, Inc. ($26,415.32). The petitions were consolidated below and treated as a single refund request by Air Products which actually paid the taxes.

[2] In the partial stipulation and appellant's specification of objections, the total amount of the claimed refund is stated as $65,890.15. Our calculation of the total of the three refund requests, however, is $65,733.03 (see note 1). We are unable to discover a reason for the discrepancy, other than mathematical error; therefore, we will use the second figure.

We will briefly set forth those facts as well as certain additional findings of fact based on testimony at the hearing.

Air Products is a Delaware corporation with its principal place of business in Allentown, Pennsylvania. It is primarily engaged in manufacturing, distributing, and selling oxygen, nitrogen, hydrogen, and argon gases (product), which are provided to its customers in either bulk liquid or bulk gaseous form. Air Products makes bulk gas sales in any one of three ways: by direct pipeline from on-site plants placed near customers who use large amounts of product, by returnable cylinders filled at Air Products' plant and delivered to customers requiring small quantities of gases, or by direct line from customer stations installed by Air Products on the sites of customers requiring intermediate quantities of gas. The customer stations are the only subject of this appeal.

In order to finance its construction of the customer stations, Air Products transfers the completed stations to leasing companies and then leases them back pursuant to a lease-purchase agreement. The customer stations consist of large insulated tanks used to hold the product in a liquid state. Piping, valves, controls, and vaporizers are also employed to return the liquid to gas at the proper temperature and pressure before it enters the customer's internal distribution system. Air Products delivers product in the liquid state by tank truck to the customer stations. Billings are metered from the delivery truck, and amounts are expressed in terms of cubic feet of gas used. The customer stations are evidently preset and are activated automatically when the customer draws on the system.

The sole question involved in this appeal is whether the customer stations should be excluded from liability for use tax under the so-called manufacturing

exclusion of the Tax Act of 1963 for Education, Act of March 6, 1956, P.L. (1955) 1228, *as amended*[3] (Act). The Act was applicable at all times pertinent to this appeal. Section 2 of the Act provided in relevant part:

> Definitions—The following words, terms and phrases when used in this act shall have the meaning ascribed to them in this section, except where the context clearly indicates a different meaning:
>
> . . . .
>
> (n)  'Use.' . . .
>
> . . . .
>
> (4)  . . . And provided further, That the term 'use' shall not include—
>
> . . . .
>
> (c)  The use or consumption of tangible personal property including, but not limited to machinery and equipment and parts and foundations therefor, and supplies . . . directly in any of the operations of—
>
> (i)  The manufacture of personal property. . . .

"Manufacture" is defined in the same section as "[t]he performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any personal property in a form, composition or character different from that in which it is acquired whether for sale or use by the manufacturer. . . ."

In aid of our consideration of the application of this section to the instant case, we make the following additional findings of fact:

1.  At standard temperature and pressure the products of Air Products exist in a gaseous state.

---

[3] Found at 72 P.S. §3403-1 et seq., though repealed by Section 280 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 47, *as amended*, 72 P.S. §7280.

2. Air Products extracts the gases from the ambient air by first purifying and pressurizing the air. The air is then cooled and liquified so that it may be separated into its constituent gases at the desired purity.

3. In all cases of delivery of bulk gases, except in the case of customer stations, the products leave the main site in gaseous form after having passed through a heat exchanger which allows the liquid to return to the gaseous state.

4. If allowed to obtain heat naturally, the liquid products will return to the gaseous state which exists at standard temperature and pressure.

The Commonwealth states the question to be decided in this case as "whether the storage of liquid gas and subsequent conversion of that liquid to a vapor constitutes manufacturing." This statement misconceives what we believe to be the true issue in this admittedly close case. There can be no doubt that the process followed by Air Products in separating the mixture called air into its constituent elemental gases so that they may be used in hospitals, factories, and other enterprises constitutes manufacturing.[4] *See generally Commonwealth v. Sitkin's Junk Co.*, 412 Pa. 132, 194 A.2d 199 (1963). The narrow issue is whether the step of vaporizing the liquid into a gaseous state *when performed at customer stations* is done "directly in *any of the operations* of . . . the manufacture of personal property." (Emphasis added.) We believe that it is and therefore reverse the Board.

The provision of the use tax law relating to manufacturing provides an exclusion from the payment of taxes rather than an exemption. *Commonwealth v.*

---

[4] The Commonwealth concedes that on-site plants, as well as Air Products' main facilities, come within the manufacturing exclusion.

*Olan Mills, Inc.,* 456 Pa. 78, 317 A.2d 592 (1974). As such, the provision must be strictly construed against the Commonwealth. Statutory Construction Act of 1972, 1 Pa. C.S. §1928(b)(3); *Commonwealth v. Sitkin's Junk Co., supra.*

In *Commonwealth v. Olan Mills, Inc., supra,* our Supreme Court found that equipment used in exposing film which was then sent for development outside the state and finally processed into a portrait qualified as equipment used " 'in *any of the operations* of (i) the manufacture of personal property.' " 456 Pa. at 84, 317 A.2d at 595 (emphasis in original). We find that holding to be controlling here. Even though at a distance from the main plant, these customer stations, in our view, complete the necessary final step in providing gas at the correct temperature and pressure for customer use. In support of its position, the Commonwealth has relied on several cases which did not arise under the use tax. The inapplicability of decisions under other taxing statutes to sales and use tax cases involving the manufacturing exclusion was fully discussed in *Olan Mills, supra.* 456 Pa. at 84 n. 7, 317 A.2d at 595-96 n. 7. We therefore make the following

### Conclusions of Law

1. The customer stations at issue in this case are used in the final step of manufacturing elemental gases from the ambient air.

2. The use of the equipment constituting customer stations is not subject to the tax imposed by the Tax Act of 1963 for Education, Act of March 6, 1956, P.L. (1955) 1228, *as amended.*

3. The Board of Finance and Revenue erred in refusing to authorize the refund of $65,733.03 claimed by Air Products and Chemicals, Inc.

142

4. Judgment should be entered in favor of Air Products and Chemicals, Inc., in the amount of $65,-733.03.

## Decree Nisi

And Now, this 16th day of November, 1976, the order of the Board of Finance and Revenue in the above captioned case is reversed, and judgment is directed to be entered in favor of Air Products and Chemicals, Inc., and against the Commonwealth of Pennsylvania, in the amount of $65,733.03, representing the use tax paid by Air Products and Chemicals, Inc., C. C. Leasing Company, and The Commonwealth Plan, Inc., together with interest and costs, according to law, unless exceptions be filed hereto within thirty (30) days. The Prothonotary is directed to notify forthwith the parties hereto or their counsel of this decree.