Commonwealth *v.* McHugh, Appellant.

Argued December 1, 1961. Before BELL, C. J., MUS-MANNO, JONES, COHEN and EAGEN, JJ.

*Manus McHugh,* with him *John Y. Scott,* and *Strong, Sullivan, Saylor & Ferguson,* for appellant.

*Lewis Kates,* Deputy to the City Solicitor, with him *Leonard B. Rosenthal,* Assistant City Solicitor, and *David Berger,* City Solicitor, for City of Philadelphia, intervenor-appellant.

*N. David Rahal,* Deputy Attorney General, with him *David Stahl,* Attorney General, for Commonwealth, appellee.

*David Dunlap,* for utility associations, as amici curiae.

*Park B. Dilks, Jr., Thomas V. Lefevre, Ernest R. von Starck,* and *Morgan, Lewis & Bockius,* for water companies, as amici curiae.

*Leon D. Metzger, William H. Wood, John B. King,* and *Hull, Leiby and Metzger,* for telephone company, amici curiae.

OPINION BY MR. JUSTICE EAGEN, March 13, 1962:

The appellant contractor entered into a series of five contracts with the water department of the City of Philadelphia to construct and install water-pipe lines, extending the existing water system of the city. The narrow, but difficult, question involved in this appeal is: Are the materials purchased in the fulfillment of these contracts subject to a use tax assessment under the provisions of the Pennsylvania Selective Sales and Use Tax Act of March 6, 1956, P. L. (1955) 1228, as amended, 72 P.S. §3403-1 et seq.?

The appellants contend, inter alia, that the use of the materials involved was for the purpose of the construction of facilities used in a public utility service and, therefore, specifically exempt under the statute. The lower court disagreed and ruled that the exemption asserted applied only to materials used in connection with already *existing* facilities and not those used in the construction of *new* public utility facilities. It concluded that the water mains involved constituted a new construction and, therefore, did not come within the tax exclusion. We cannot subscribe to this view.

The original 1956 act specifically excluded from the tax, tangible property used "in the producing, delivering or rendering of a public utility service." However, the pertinent public utility exclusion section was

amended on April 5, 1957,[1] so that it now provides as follows: ". . . the term 'use' shall not include; . . . (3) The use or consumption of tangible personal property including, but not limited to machinery and equipment and parts and foundations therefor, and supplies . . . directly in any of the operations of . . . (iii) The producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities used in such service, whether or not such facilities constitute real estate. . . ."

To us, this is a clear manifestation of legislative intent to broaden the exemption, and to exclude from the tax all materials used in connection with the improvement of already existing facilities, as well as those used in the construction of new facilities.

It is an established rule of statutory construction that "Every law shall be construed, if possible, to give effect to all its provisions": Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551. Further, we have repeatedly said that in the construction of a statute "that presumably every word, sentence or provision therein is intended for some purpose, and accordingly must be given effect." *Sterling v. Philadelphia*, 378 Pa. 538, 541, 106 A. 2d 793 (1954). See also, *Sherwood v. Elgart*, 383 Pa. 110, 117 A. 2d 899 (1955), and *American Brake Shoe Co. v. Dist. Lodge 9*, 373 Pa. 164, 94 A. 2d 884 (1953).

The interpretation given the exclusion clause by the court below renders the word "constructing" superfluous and of no intended significance. This was error. It must be given effect. Since the word "constructing" is not defined in the 1957 amendment, it must be given its plain everyday meaning, Section 33 of the Statutory Construction Act, supra. In *Hoffman v. Kline*, 300

---

[1] Act of April 5, 1957, P. L. 34, 72 PS §3403-2(n)(3)(iii).

Pa. 485, 494, 150 A. 889 (1930), we quoted with approval the following from *In re Howett*, 10 Pa. 379 (1849) : " '. . . In the common understanding and language of the people, when we speak of the erection or construction of a house or a building, we mean the erection of a new house or building, and not the repairs of an old one.' " To the same effect, see, *Miller v. Hershey*, 59 Pa. 64 (1868) ; *Contas v. Bradford*, 206 Pa. 291 (1903). Therefore, it is quite evident that "constructing" referred to and encompassed the erection of *new* facilities.

Further, if the legislature intended the exemption to apply only to the construction of existing facilities, why did it use the additional words, "reconstructing, remodeling, repairing or maintaining?" These terms were used with deliberate purpose and are definitely not synonymous with that of "constructing."

Nor are we persuaded that the words of the statute, *"the facilities used in such service,"*[2] connote that the facilities involved have to be already in actual use in order to come within the legislative meaning and tax exclusion. In our opinion, "used in such service" is descriptive of the purpose for which the materials or tangible property is used and, is not restrictive to the time of use.

Section 1(10) of the Public Utility Law (Act of May 28, 1937, P. L. 1053, as amended, 66 PS §1102), defines "facilities" as follows: " 'Facilities' means all the plant and equipment of a public utility, including all tangible and intangible real and personal property without limitation, and any and all means and instrumentalities in any manner owned, operated, leased, licensed, used, controlled, furnished, or supplied for, by, or in connection with, the business of any public utility . . . ."

---

[2] Emphasis ours.

Section 401 defines "Character of services and facilities" as follows: "Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employes, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. Subject to the provisions of this act and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service. Any public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control by the commission as to service and extensions, with the same force and in like manner as if such service were rendered by a public utility."

Obviously, the above refers to and includes all facilities available for public use whether they be in actual use at the moment or not. The duty of a utility is not only to "use" facilities to furnish services but also to have facilities available that it must have in order to perform its statutory duty, and to provide the required service to which the public is entitled. This is inherent in the service it is required to supply.

Without auxiliary verbs, or other words, indicating past, present or future tense, the word "used" is a participial adjective which has no fixed meaning in terms of time. See Webster's New International Dictionary (2d Ed. 1959). Standing alone, "used" can sound in the past, present or future tense. Hence,

it was error for the court below to employ the word exclusively in the present tense. As stated, at p. 10, in the brief for the Bell Telephone Company of Pennsylvania, amicus curiae, "Furthermore . . . the words 'used in such [public utility] service', as applied in Section 2(n)(3)(iii), are merely descriptive of the character and type of facilities which the Legislature intended to exclude, and were never intended to refer only to facilities in actual current use by the utility engaged in furnishing such service. The word 'used' is frequently resorted to for such descriptive purposes even though the article being described is not at the moment in actual use in any respect. Thus, a hardware store operator may say to a customer that a power tool is 'used' for shaping or planing wood even though it is sitting in a corner of his store and is obviously not in actual use for any purposes. Similarly, a salesman who is urging the purchase of a desk by a customer may properly describe the desk as 'something used for studying, reading and writing'. In so doing, his description of the functions which the desk is designed to perform in no way alters the fact that the desk is presently a facility for studying, reading and writing, even though it is not at that time being used for such purposes. The salesman's employment of the phrase 'used for studying, reading and writing' is helpful in identifying and describing the activities for which the desk is a facility; it does not, in any sense, indicate that the desk is presently being used in such activities."

Finally, to conclude that the legislature intended to tax the construction of new facilities, while exempting from the tax the reconstruction of existing facilities, would lead to an absurd and unreasonable result.

The extension of the facilities of a public utility is as important to the public generally as is the maintenance of the present facilities. The cost of extension,

undoubtedly, greatly exceeds the cost of maintenance. It seems improbable to us that the legislature would grant a utility an exemption on the smallest portion of its costs and impose the tax on the greater portion thereof. This is particularly true in view of past legislative policy to exclude from tax public utility property because of the inherent public interest in the performance of its utility functions. Also, is it reasonable to conclude, that the legislature intended to impose a tax on water mains and similar material, when such are used to extend the water system, and exempt the same materials if used in the maintenance of the same system?

Judgment reversed.

Mr. Justice COHEN dissents.

Justice ALPERN took no part in the consideration or decision of this case.