Commonwealth *v.* Sitkin's Junk Co.,
Appellant.

Argued May 27, 1963. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Howard Gould,* with him *Lewis H. Markowitz, W. William Anderson,* and *Markowitz, Kagen & Griffith,* and *Gould & Reichert,* for appellants.

*Edward T. Baker,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, October 9, 1963:

These appeals present one issue: the taxability, under the "Selective Sales and Use Tax Act" of 1956 (Act),[1] of machinery sold to, or used by, persons who purchase mixed unsorted scrap and, by the use of such machinery, sort, cut, bale and compress such scrap into forms suitable for sale to various steel mills.

Sitkin's Junk Co., Inc., and Sitkin's Metal Trading, Inc. (taxpayers) are engaged in the scrap business in the course of which they purchase from homes, farms, industries and other sources scrap which is mixed and unsorted. Upon receipt of such scrap, the taxpayers remove therefrom the unusable and unsalable portions and the "metallic scrap remaining is sorted, sometimes cut into convenient lengths, sometimes baled, and in any event then sold to various steel mills."[2] As purchased, the mixed unsorted scrap has little, if any, commercial value; after handling and preparation by the taxpayers, such scrap becomes an article highly useful in the production of steel. In the handling and preparation of such scrap, the taxpayers employ certain machinery—alligator shears, hydraulic presses, acetylene torches, etc.—and the Commonwealth herein seeks to sustain the validity of taxes levied under the Act upon the sale to, or the use by, the taxpayers of such machinery. The taxpayers claim that, by reason of the nature of their business, they are within the so-called manufacturing exclusions of the Act.

After the Commonwealth had assessed taxes against the taxpayers for the period from March 7 to November 30, 1956 and after the taxpayers had unsuccess-

---

[1] Act of March 6, 1956, P. L. (1955) 1228, as amended, 72 PS §3403-1 et seq.

[2] Findings of fact by the court below.

fully exhausted their administrative remedies under the Act, appeals were taken to the Court of Common Pleas of Dauphin County. After a hearing at which certain facts were stipulated and oral testimony received, that court directed the entry of judgments for the amount of the taxes against the taxpayers. From the entry of such judgments these appeals were taken.

Section 201(a) (72 PS §3403-201) imposes a tax on "each separate sale at retail" of tangible personal property, the purchaser to pay the tax to the vendor for transmission to the Commonwealth. Section 201-(b) (72 PS §3403-201) of the Act imposes, inter alia, a tax "upon the use . . . of tangible personal property purchased at retail", the tax to be paid to the Commonwealth by the persons who make such use.[3]

The Act (Section 2(j), 72 PS §3403-2), in defining a "Sale at Retail" of tangible personal property upon which the tax is imposed under Section 201(a), *specifically* excludes a transfer of tangible personal property either for the purpose of resale or of "machinery and equipment . . . to be used . . . in any of the operations of—(a) The manufacture of personal property . . ." and the Act (Section 2(n), 72 PS §3403-2), in defining "Use" of tangible personal property, *specifically* excludes the " 'Use' . . . of tangible personal property . . . in any of the operations of—(i) The manufacture of personal property: . . . ."[4]

Whether the instant taxes be imposed upon a theory of a "Sale at Retail" or a "Use", the real crux of the

---

[3] This "use" tax is not payable if the person has paid the tax under §201(a) or has paid the tax under §201(b) to the vendor with respect to such use.

[4] Under §2(c)(iv), the "Use" of tangible personal property in the "Processing" of personal property is likewise specifically excluded from imposition of the tax. While taxpayers rely in part on this provision, in our view, such "Processing" provision does not apply to the instant fact situation under the definition in subclause (c.1) of §2.

problem is whether taxpayers' machinery is employed in the "manufacture of personal property" as that phrase is defined in the Act.

The Act defines "Manufacture" as: "[t]he performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any personal property in a form, composition or character different from that in which it is acquired whether for sale or use by the manufacturer, and shall include but not be limited to—(1) Every operation commencing with the first production stage and ending with the completion of personal property having the physical qualities . . . which it has when transferred by the manufacturer to another; . . . .": Sections 2(c), 2(c)(1). Our inquiry is whether the modus operandi of taxpayers in the handling of the scrap from the time of its acquisition until it assumes a form available for sale to the various steel mills constitutes a "manufacture of personal property" within the statutory definition of "manufacture".

The court below held that the taxpayers' operations did not constitute a "manufacture of personal property" under the Act and that the sale to, and the use by, the taxpayers of the machinery was taxable. In reaching that conclusion, the court relied in large measure upon *Commonwealth v. Donovan*, 76 Dauph. 191. In *Donovan* (p. 192), the court said that ". . . prior to the adoption of the [Act] this taxpayer's activities would not be manufacturing as that term has been defined . . . under other tax statutes. . . . The cases hold that a 'new and different' product must emerge or the activity is something less than manufacture." With that summary of the law prior to the Act we are in accord. However, in the statutes which antedated the Act and out of the construction of which evolved this judicial definition of "manufacture" or "manufacturing", generally there was no definition of "manufac-

ture" and the courts resorted to the popular conception of the meaning of that term. In the Act now under construction the legislature has seen fit to define at some length the term "manufacture".

In *Donovan* (p. 198), the court further said: "[t]here is little doubt that the legislature in adopting the definition of manufacturing [in the instant Act] intended only to describe the process of manufacturing and not to enlarge it beyond the definition that had been developed by over 100 years of careful judicial review." Upon this rationale, the court below applied to the construction of "manufacture" under this Act judicial definitions of "manufacturing" under prior tax statutes; in this respect the court erred. It was the duty of the court to apply that definition of "manufacture" which the legislature set forth in the instant Act and not to substitute therefor judicial definitions of that term under prior tax statutes.

When this Act was passed the legislature presumably was fully aware of the construction placed upon "manufacture" by the courts under the prior statutes. Where the legislature, in a later statute, uses the same language as used in a prior statute which has been construed by the courts, there is a presumption that the language thus repeated is to be interpreted in the same manner such language had been previously interpreted when the court passed on the earlier statute: *Jones and Laughlin Tax Assessment Case,* 405 Pa. 421, 432-3, 175 A. 2d 856; *Parisi v. Philadelphia Zoning Board of Adjustment,* 393 Pa. 458, 462, 143 A. 2d 360. Had the legislature intended that "manufacture" or "manufacturing" be given under the Act the same construction previously given all that was necessary in the new statute was to use the words "manufacture" or "manufacturing". Instead, the legislature drafted a somewhat lengthy definition of "manufacture", twice amended since its enactment. We have long held that,

where a statute contains its own definition, the meaning of the terms as defined at common law or as constructed under prior statutes is not controlling: *Blauner's, Inc. v. Philadelphia,* 330 Pa. 342, 349, 198 A. 889; *Kohn v. Philadelphia,* 151 Pa. Superior Ct. 635, 642, 30 A. 2d 672. By specifically defining "manufacture", the legislature indicated its intent that "manufacture" be construed in accordance with the statutory language and that the construction of such word was not to be controlled by prior judicial construction of such word under prior tax statutes. By way of example, the Act provides that the finished product be *"different"* from that form in which it was acquired whereas under prior judicial construction the finished product had to be both *"new and different".*

Furthermore, ". . . we have repeatedly said that in the construction of a statute 'that presumably every word, sentence or provision therein is intended for some purpose, and accordingly must be given effect.' [citing cases]": *Commonwealth v. McHugh,* 406 Pa. 566, 569, 178 A. 2d 556; Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551. Considering all the language contained in the statutory definition of "manufacture", we are convinced that prior judicial authority is not controlling in the definition of that word under this Act.

In its definition of "manufacture", the Act (Section 2(c)) emphasizes two criteria, i.e., the *type* of the activity and the *result* of that activity. To constitute "manufacture", *first,* the *type* of the activity must fall into one or more categories, i.e., "manufacturing, fabricating, compounding, processing or other operations" and *second,* as a *result* of one or more types of the prescribed activities, the personal property must be placed "in a form, composition or character *different* from that in which [such personal property]" was acquired. (Emphasis supplied). In the case at bar, it is undis-

puted that the taxpayers do not "fabricate" or "compound" the scrap nor is there any merit in their contention that they "process" such scrap. To come within the orbit of exclusion from the imposition of these taxes the taxpayers' activities must fall within the category of "manufacturing" or "other operations" if the latter words have a meaning apart from the other words in the definition.

It may be argued that the words "other operations", under the application of the ejusdem generis rule, must be construed as general words which are restricted in their meaning to that which is included in the preceding particular words: Statutory Construction Act, supra, §33. However, that rule yields if the result of its application is to arrive at a conclusion "inconsistent with the manifest intent of the legislature:" Statutory Construction Act, supra, §31. Our examination of this Act would indicate that the legislature intended that "other operations" include and embrace other types of activities not covered by the words "manufacturing, fabricating, compounding, processing".[5]

An "operation" is an "action" or "activity" and is the "action of making or producing something": The Oxford English Dictionary, Vol. VII, p. 145. In *Donovan*, supra (p. 192), the Court said: ". . . And as the definition of 'manufacture' was further developed by the cases we find that the *end result of the process has become the important element.* The cases hold that a 'new and different' product must emerge or the activity

---

[5] Section 2(c)(1) was added to the Act by the Act of April 5, 1957 which had as one of its stated titulary purposes the "changing and clarifying of certain definitions". This Section provides: "Every *operation* commencing with the first production stage and ending with the completion of personal property having the physical qualities . . . which it has when transferred by the manufacturer to another" and is included under the general definition of "manufacture". (Emphasis supplied).

is something less than manufacture." (Emphasis supplied). Taking into consideration that the Act now prescribes that the finished product be "different" rather than "new and different" *as was decided in Norris Brothers v. Commonwealth,* 27 Pa. 494, yet the rule enunciated in *Norris* certainly indicates that the end result is *an,* if not *the,* important element in determining whether "manufacture" has taken place and furnishes a guide in deciding whether the taxpayers' activities fall within the term "manufacture".

Using the machinery sought to be taxed, the taxpayers convert the scrap which they acquire into lots or forms to suit the needs of their steel mill and other metal processing customers. The court below described that which the taxpayers do: "Some of this scrap, such as old railroad track, needs only to be cut to a convenient size; some must be sorted into ferrous and non-ferrous classifications and perhaps cut to size; some must be classified according to chemical analysis to determine the amount of sulphur or phosphorous or the like contained in it; and some, such as junked automobiles, must go through a process where unwanted non-metallic parts are removed or destroyed by burning and the metal remaining compressed into a bale approximately 5 feet by 21 inches by 21 inches."[6]

Our analysis of the provisions of this Act and the taxpayers' activities convinces us that these activities do fall within the statutory definition of "manufacture", i.e., "other operations" and within the activities excluded from the operation of this tax statute. The court below took the position that the scrap subjected to the taxpayers' activities remained scrap even when such activities had been completed. That may well be.

---

[6] It seems undisputed that, if the steel mills or metal processing customers of taxpayers did to their own scrap exactly the same thing the taxpayers do, such activities on the part of the steel mills or other metal processors would be considered within the exclusionary activities of the Act.

However, such scrap, after and as a result of the handling and activities of the taxpayers, was in "a form, composition and character" *different* from that scrap which had been acquired by the taxpayers. Posed in another fashion, would the Commonwealth assert that a farmer who purchased machinery to drain marsh land was subject to tax on such machinery[7] because, after its operation upon the land, land remained where there was land before and that it was not, therefore, used directly in a farming operation? We think not. In the one case there is a different category of land while in the case at bar there is a different category of scrap; as a result of both operations that which was useless has been rendered useful and, in each instance, something *different* has been produced.

While it is true that §602, 72 PS §3403-602, provides that "[e]very sale of tangible personal property or [certain prescribed] services shall be presumed to be at retail and to be subject to the tax imposed", the effect of that section is not to alter the rules of statutory construction but to place upon the alleged taxpayers the burden of proving that the transaction sought to be taxed is either not within the orbit of the Act or that it is exempted from the operation of the Act under §203. This burden has been amply met by the instant taxpayers.

The court below considered the definition of what is not a sale at retail as an exemption from taxation to be strictly construed. With that we cannot agree. The true exemptions in the Act are set forth in §203. The definitions of what are and what are not sales at retail are not exemptions save in the sense that what is not specifically taxed by a taxing statute is exempt from its operation. It is only when the taxpayer or his property is within the general language of the stat-

---

[7] Section 2(j)(7) b) and §2(n)(4)(c)(ii), 72 PS §3403-2.

142

ute imposing the tax that provisions relied upon to establish an exemption are to be strictly construed: *Shillington Bank Case,* 331 Pa. 540, 1 A. 2d 677. In *Scranton v. O'Malley Mfg. Co.,* 341 Pa. 200, 205, 19 A. 2d 269, we said: "While it is the duty of every citizen to bear his just share in supporting the government, he cannot be compelled to do so except in a way provided by a statute." See also: *Murray v. Philadelphia,* 364 Pa. 157, 164, 71 A. 2d 280.

The difference in the scrap when acquired and the scrap after handling by taxpayers is sufficient to bring the taxpayers' activities within the operation of the manufacturing exclusion of the Act. The machinery in question is used directly in such activities and the sale thereof to, and the use thereof by, the taxpayers are not taxable transactions within the purview of the Act.

Judgments reversed.