Equitable Gas Company, Appellant, *v.* Commonwealth of Pennsylvania, Appellee.

Argued February 4, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, MENCER, ROGERS and BLATT. Judge WILKINSON, JR. did not participate.

*Ronald M. Katzman,* with him *James E. Reid, Jr.,* and *Goldberg, Evans & Katzman,* for appellant.

*Paul S. Roeder,* Assistant Attorney General, for appellee.

OPINION BY JUDGE KRAMER, April 16, 1975:

This is an appeal filed by Equitable Gas Company (Equitable) from an adjudication of the Board of Finance and Revenue (Board) dated May 12, 1966, refusing the prayer of Equitable's petition for a refund of use tax in the amount of $258.44 which had been assessed by the Department of Revenue upon paving materials, i.e., sand, gravel, cement, etc., used by Equitable in the construction, reconstruction and repairing of public road surfaces incident to work on gas lines and mains beneath the roads. This is an old case which has languished about on the dockets of the Court of Common Pleas of Dauphin County (Commonwealth Division) since June 27, 1966. It was transferred to this Court in 1970, and, after prodding of the parties by this Court, a stipulation of facts was filed with this Court on August 2, 1974, and

the matter was finally set down for argument for final determination. For the purposes of this opinion we have accepted all of the stipulated facts.

Equitable is a Pennsylvania corporation and a public utility engaged in the business of providing natural gas service to the public in the Pittsburgh area. As a result of an audit of the books of a supplier of Equitable by the Pennsylvania Department of Revenue, an assessment was made against Equitable for sales or use tax under the provisions of the Tax Act of 1963 for Education (Act), Act of March 6, 1956, P.L. (1955) 1228, *as amended*.[1] The assessment was made upon Equitable's purchases and use of paving materials, all of which were used, consumed and required in the repairing, paving and repaving of public roads. The assessment was restricted to the period August 1, 1963 to November 30, 1964. All of the paving and repaving was performed directly by Equitable pursuant to its responsibilities under the Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1101 et seq. The public roads into which the subject paving materials were incorporated were under the ownership, maintenance and control of various governmental bodies of the Commonwealth. Although the amount of the tax assessment ($258.44) is insignificant when compared with the total cost of service of Equitable, the legal principles involved in this case have a far-reaching effect not only upon Equitable but upon all public utilities operating within the Commonwealth. Equitable paid the tax under protest and filed a petition for a refund claiming that all of the road resurfacing materials it purchased are directly used in render-

---

1. The Tax Act of 1963 for Education (prior to 1963 the "Selective Sales and Use Tax Act") was repealed and replaced by the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7201 et seq., which, of course, is not pertinent to this discussion. Although the Act has been repealed, it may still be found at 72 P.S. §3403-1 et seq.

ing its public utility service and, therefore, excluded under section 2(n) (4) (c) (iii) of the Act, 72 P.S. §3403-2(n) (4) (c) (iii).

In carrying out its public utility service, Equitable is required to construct and repair gas pipelines beneath public road surfaces. From time to time, this necessitates the excavation of public roads and, after the installation or repair of gas pipelines, Equitable purchases road resurfacing materials to pave or repave the roads. The issue presented to us is rather narrow. Equitable contends that such materials are directly used by it in furnishing its public utility service. The Commonwealth contends that such materials are not directly used by Equitable in rendering its public utility service. The case turns on our interpretation of the applicable statutory provisions excluding certain items from the tax imposed by the Act.

Among the "definitions" contained in section 2 of the Act, 72 P.S. §3403-2, we find the pertinent exclusionary statutory language. The term "use" is defined in subsection (n) as follows:

"(4) [T]he term 'use' shall not include—

\* \* \* \*

" (c) *The use* or consumption of *tangible personal property* including, but not limited to machinery and equipment and parts and foundations therefor, and supplies . . . *directly* in any of the operations of—

\* \* \* \*

"(iii) *The producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities used in such service,* whether or not such facilities constitute real estate. . . .

\* \* \* \*

"The exclusions provided in subparagraphs . . . (iii) . . . shall not apply to tangible personal property or services to be used or consumed in managerial sales or other non-operational activities.

"The exclusion provided in subparagraph (iii) shall not apply to (a) construction materials used to construct, reconstruct, remodel, repair or maintain facilities *not used directly* in the production, delivering or rendition of public utility service, or (b) tools and equipment used but not installed in the maintenance of facilities used in the production, delivering or rendition of a public utility service." (Emphasis added.)

It seems clear to us that this statutory language was intended to create an *exclusion* to the tax, rather than an exemption. The legal consequences of the distinction between a tax exclusion and a tax exemption were set forth by our Supreme Court in *Commonwealth v. Sitkin's Junk Co.,* 412 Pa. 132, 194 A.2d 199 (1963), wherein it was pointed out that only *exemptions* are to be strictly construed against the taxpayer. *Exclusions* are items which are not intended to be taxed in the first place, and to the extent there is doubt about the meaning of the statutory language, such exclusionary provisions are to be construed against the taxing body. *Alan Wood Steel Company v. Philadelphia School District,* 425 Pa. 455, 229 A.2d 881 (1967) and *Tyger & Karl Complete Water Systems Co., Inc. v. Commonwealth,* 5 Pa. Commonwealth Ct. 154 (1972).

In determining what may be included with the term "public utility service," we are guided by *Commonwealth v. Equitable Gas Company,* 415 Pa. 113, 202 A.2d 11 (1964), where the Court utilized the definition found in section 2(20) of the Public Utility Law, 66 P.S. §1102(20), which defines such service as being used "in its broadest and most inclusive sense, and includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities . . . in the performance of their duties under [the Public Utility Law] to their patrons . . . and the public. . . ." There is also ample authority in the law under which a public

utility is required, in the performance of its public utility service, to properly reconstruct and repave public roads after an excavation necessitated by the installation or repair of a utility service line. *See Postal Telegraph-Cable Company v. Pennsylvania Public Utility Commission,* 154 Pa. Superior Ct. 340, 35 A.2d 535 (1943) ; *West Penn Railways Company v. Pennsylvania Public Utility Commission,* 142 Pa. Superior Ct. 140, 15 A.2d 539 (1940) ; and section 401 of the Public Utility Law, 66 P.S. §1171.

Counsel for the Commonwealth at the argument in this case quite frankly admitted that the pipe itself and any wrappings or other protective shields to the pipeline are without question excluded under the above-quoted provisions of the Act, but he argues that the material used above that point in the construction or repair of the road surfaces is not within the exclusion. We believe this position is untenable. In *Commonwealth v. McHugh,* 406 Pa. 566, 178 A.2d 556 (1962), the Court was confronted with the question of whether materials purchased for the construction and installation of water pipelines in the City of Philadephia were subject to the sales and use tax under the provisions of the Act. There the Court held that the Commonwealth's position that such material was taxable when used for new construction but not when used for reconstruction would lead "to an absurd and unreasonable result." We conclude that the Court's holding in *McHugh* is equally applicable to this case, and we hold that the completion of an excavation for the installation or repair of a gas pipeline, used to serve the public, including the resurfacing of a public road, is an essential and integral part of the pipeline operation necessary for the rendering of Equitable's public utility service. The materials in question, therefore, come within the exclusions set forth in the above-quoted portion of the Act.[2]

---

2. We recognize, of course, that the assessment of a sales or use tax upon a public utility is in reality an indirect tax on the

While we agree with the Commonwealth's position that *Equitable Gas, supra,* which involved the tax liability on the sale of gas meters, and *Commonwealth v. The Bell Telephone Company of Pennsylvania,* 92 Dauph. 136 (1970), *aff'd.,* 444 Pa. 620, 281 A.2d 633 (1971), which involved a tax liability on trucks used by a public utility, appear to have been stronger cases for exclusion than is the instant case, we must conclude that under the approach used by our Supreme Court in these cases, the materials used in the instant case were directly used in the rendition of the public utility service.

The reason given by the Sales Tax Board in this case in refusing Equitable's petition for refund is stated as follows:

"The Board, in Docket Number 5413 and SR-1628, has held that cement, slag and concrete used in street repairs are subject to tax. Petitioner [Equitable] acts as a contractor in this function and is the ultimate consumer of the materials used."

We hold that this reasoning is contrary to the holdings of our Supreme Court in *McHugh, supra,* and *Equitable Gas, supra.*

### CONCLUSIONS OF LAW

1. The purchase of paving materials used by Equitable incident to the construction, repair, paving or repaving of public roads as a result of excavation necessitated by the installation or repair of gas pipelines under

---

consumers. Every penny of all taxes which a public utility pays is collected by the utility from its consumers. Under the Commonwealth's contention in this case it would tax indirectly the consuming public for the purchased materials utilized by the utility in paving or repaving a public road (which was itself constructed through payments by the public). In other words, under the Commonwealth's contention, the public pays for the road through its taxes, pays for the excavation and repaving of the public road through its public utility bills for services rendered, and, in addition, is being asked to pay sales taxes on the materials used to repave the very same public road.

such public roads is a use of tangible personal property directly related in the rendition of public utility service and, therefore, comes within the exclusions set forth in the Tax Act of 1936 For Education.

2. The adjudication of the Board of Finance and Revenue, dated May 12, 1966, sustaining the Sales Tax Board of Review in refusing the petition for refund of Equitable Gas Company for a refund of taxes paid upon the purchase of materials used in the construction, repair, paving or repaving of public roads incident to excavations for the installation or repair of gas pipelines directly used in the rendition of public utility service, was in error and, therefore, must be reversed.

ORDER

AND NOW, this 16th day of April, 1975, the adjudication of the Board of Finance and Revenue issued in the above-noted matter on May 12, 1966, is hereby reversed and the Department of Revenue is hereby ordered to refund to Equitable Gas Company the sum of $258.44 within 30 days from the date hereof.