**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Eric J. MAGLIOCCO, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 27, 2001.

Filed Sept. 11, 2002.

Peter Rosalsky, Public Defender, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Commonwealth, appellee (submitted).

Before: McEWEN, P.J.E., JOHNSON, and JOYCE, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Eric J. Magliocco appeals the judgment of sentence imposed following his conviction of Ethnic Intimidation and Possession of an Instrument of Crime (PIC). See 18 Pa.C.S. §§ 2710, 907 (respectively). Concerning his conviction of PIC, Magliocco contends that the evidence failed to satisfy all of the statutory elements specified by Crimes Code section 907 on the date of his criminal acts. Concerning his conviction for Ethnic Intimidation, Magliocco contends that the evidence failed to establish his conviction of a predicate offense required by Crimes Code section 2710. For the following reasons, we affirm Magliocco's PIC conviction but reverse his conviction of Ethnic Intimidation.

¶ 2 This matter arises out of a racially charged incident in the City of Philadelphia between Magliocco and two African-American children. On July 7, 1999, ten-year-old Fatima Smith and her cousin Tamara were walking down the 1300 block of South Carlisle Street. Magliocco, a resident of the neighborhood, arose from his front porch and challenged the two asking, "What are you looking at?" When one of the girls asked him to whom he was speaking Magliocco responded, "you, you black nigger." Magliocco then disappeared into his house and returned with a baseball bat, which he swung over his head as he continued to berate the girls using both profanity and racial epithets. While still swinging the bat, Magliocco threatened, "I'm going to get you. I'm going to make sure that there are no more niggers who live on this block." One of the girls, who did in fact live on the 1300 block of Carlisle Street, ran to her house to call the police. Two Philadelphia Police Department officers arrived and observed Magliocco standing on the front steps of his house, waving the bat, and yelling that he was "going to kill every nigger on the block." When one of the officers, Damian Evans, told Magliocco to drop the bat, Magliocco responded, "I'm not talking to you nigger," but then dropped the bat in the doorway of his home and walked inside. Police then arrested him.

¶ 3 Following a bench trial, the Honorable Joan A. Brown convicted Magliocco of Ethnic Intimidation and PIC, but acquitted him of terroristic threats. Magliocco filed a "Motion for Extraordinary Relief" which the court denied, and at a later sentencing hearing the court imposed a sentence of two years' reporting probation with the condition of mandatory mental health counseling. Magliocco filed this appeal, and in preliminary and supplemental Statements of Matters Complained of on Appeal, challenged the sufficiency of the

evidence to sustain either of his convictions. Magliocco now raises the following questions for our review:

1. Is not the evidence insufficient to sustain the conviction for Possessing Instruments of Crime due to failure to prove that baseball bats are commonly used for criminal purposes?

2. Is not the evidence insufficient to sustain the conviction for Ethnic Intimidation due to failure to prove the "other offense" element of the crime?

Brief for Appellant at 3.

¶ 4 Magliocco's two questions each raise issues of evidentiary sufficiency. When reviewing a challenge to the sufficiency of the evidence, we must determine "whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense[ ] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Jackson*, 506 Pa. 469, 485 A.2d 1102, 1103 (1984). Normally, evidence is deemed sufficient to support the underlying convictions if:

> there is testimony offered to establish each material element of the crime charged and to prove commission of the offense by the accused beyond a reasonable doubt. The question of credibility is left for the jury and the verdict will not be disturbed if the jury determines the evidence is worthy of belief.

*Commonwealth v. Karkaria*, 533 Pa. 412; 625 A.2d 1167, 1170 (1993) (citations omitted). The factfinder is free to believe all, part or none of the evidence, and "[t]he facts and circumstances established by the Commonwealth 'need not be absolutely incompatible with the defendant's innocence.'" *Commonwealth v. Hodge*, 441 Pa.Super. 653, 658 A.2d 386, 387–88 (1995)

(quoting *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468, 478 (1977)). We will reverse the resulting verdict on the basis of legal insufficiency only where the testimony "is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture." *Karkaria*, 625 A.2d at 1170 (citations omitted).

¶ 5 In support of his first question, Magliocco contends that the evidence adduced at trial failed to satisfy the statutory definition of "instrument of crime" and was therefore insufficient to sustain his conviction of PIC. Brief for Appellant at 7–8 (quoting 18 Pa.C.S. § 907(d)). This is a question of statutory construction for which our standard of review is plenary. *See Commonwealth v. Hockenbury*, 549 Pa. 527, 701 A.2d 1334, 1336 n. 3 (1997). Magliocco argues that the definition of PIC effective on July 7, 1999, when this incident occurred, recognized as "instruments of crime" only those things "commonly" used for criminal purposes. Brief for Appellant at 7–8. Because the Commonwealth failed to introduce evidence on the commonality with which baseball bats are used in the commission of crime, Magliocco concludes that his conviction cannot be sustained. *Id.* The trial court concluded that the statutory definition operative on the date of Magliocco's conduct had been previously amended to delete the requirement of commonality. Trial Court Opinion, 3/2/01, at 5–6. Accordingly, the court concluded that the Commonwealth had in fact adduced sufficient evidence to sustain Magliocco's conviction of PIC. Trial Court Opinion, 3/2/01, at 6.

¶ 6 Magliocco's argument requires us to resolve apparent conflict in competing versions of Section 907. Prior to 1995, the Crimes Code defined the crime of PIC as follows:

**§ 907. Possessing instruments of crime**

**(a) Criminal Instruments generally.—** A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

18 Pa.C.S. § 907(a). The statute then defined "instrument of crime," in pertinent part, as follows:

(2) anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

Act of December 6, 1972, P.L. 1482, No. 334, § 1.

¶ 7 In 1995, the Pennsylvania Supreme Court applied the foregoing definition to determine the legal sufficiency of evidence to sustain a conviction for PIC where, as here, the defendant used a baseball bat. *See Commonwealth v. Ngow*, 539 Pa. 294, 652 A.2d 305 (1995) (Filed 1/11/95). The Court held that the Commonwealth could not sustain its burden of proof to show that a baseball bat was an instrument of crime without producing evidence that "a significant proportion of assaults involve[d] baseball bats." *Id.* at 306. In a concurrence, Justice Castille recognized that the statute's common use requirement would allow perpetrators to use baseball bats to commit crime with impunity until the Commonwealth could amass ample statistics to document their frequency of use for criminal purposes. *See id.* at 307 (Castille, J. concurring). To obviate this "apparent inequity," Justice Castille suggested that the legislature might remove the common use requirement by amending Section 907 to delete the word "commonly" from the definitional language. *See id.* at 307 ("If [the definition were] so rewritten, then the prosaic baseball bat of youth would be elevated to an instrument of crime when it is used for hitting persons instead of baseballs.").

¶ 8 Within six months of the Court's decision in *Ngow*, the legislature amended Section 907. *See* Act of July 6, 1995, P.L. 238, No. 27, § 1 (effective 60 days after date of enactment). In apparent response to Justice Castille's reasoning, the amendment deleted the word "commonly" from the definition of "instrument of crime." In the official text, the deletion appears bracketed, in bold-face type, as follows:

(2) anything [**commonly**] used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

*Id. See also* 1 Pa.C.S. § 1951 (prescribing manner in which deletions from statutory language must be designated).

¶ 9 In 1996, the legislature again amended Section 907. The amendment included extensive additional language to proscribe as a third-degree felony the use or possession of body armor during the commission of a felony, and edited the definition of instrument of crime raising the first letter of the word "anything" from lower to upper case. *See* Act of July 11, 1996, P.L. 552, No. 98, § 1 (effective 60 days after date of enactment). Additionally, the amendment appeared to reinsert the word "commonly." Nevertheless, the word was not designated as amended material in accordance with the Statutory Construction Act (the Act). *See* 1 Pa.C.S. § 1951 (prescribing manner in which additions to statutory language must be designated). Thus, the text of the 1996 amendment appeared, in pertinent part, as follows:

(2) [anything] *Anything* commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

Act of July 11, 1996, P.L. 552, No. 98, § 1.

¶ 10 This 1996 statutory amendment prescribed the definition of "instrument of crime" applicable on the date of Magliocco's acts. Magliocco argues that the reappearance of the word "commonly" con-

stitutes an effective amendment of the statutory language reintroducing the commonality requirement that the previous amendment deleted. Brief for Appellant at 11–12. We disagree for two reasons, both rooted in the Statutory Construction Act.

¶ 11 Initially, the Act prescribes a mandatory process for designation in print of new language or deletion of existing language from statutory material. *See* 1 Pa. C.S. § 1104(a). Section 1104, governing "[p]rinting of amendatory statutes," directs, in pertinent part, that:

> the Director [of the Legislative Reference Bureau] shall cause to be printed between brackets, the words, phrases, or provisions of the existing statute, if any, which have been stricken out or eliminated by the adoption of the amendment, and he shall cause to be printed in italics or with underscoring all new words, phrases or provisions, if any, which have been inserted into or added to the statute by the passage of such amendment.

1 Pa.C.S. § 1104(a).

¶ 12 The Act also directs that we recognize and apply these conventions to interpret amendatory material. *See* 1 Pa.C.S. § 1951. Section 1951 directs that "in ascertaining the correct reading, status and interpretation of an amendatory statute, the matter inserted within brackets shall be omitted, and the matter in italics or underscored shall be read and interpreted as part of the statute." *Id.* Neither Section 1104 nor Section 1951 empower us to accept as controlling any portion of an amendment that is not printed in the designated manner. Because the word "commonly" does not appear italicized or underscored in the July 11, 1996 amendment, we cannot accept Magliocco's contention that its inclusion in the amendatory material constitutes an expression of the legislative will.

¶ 13 Secondly, the Act provides that where, as here, the latest amendment of a statute does not incorporate deletions made by prior amendments, those deletions remain effective nevertheless, to be read into the current amendment. *See* 1 Pa.C.S. § 1954. Section 1954 reads as follows:

> **§ 1954. Merger of subsequent amendments**
>
> Whenever a statute has been more than once amended, the latest amendment shall be read into the original statute as previously amended and not into such statute as originally enacted. This rule applies whether or not the previous amendment is referred to and whether or not its language is incorporated in the latest amendment. *If the insertions in and the deletions from the statute made by the previous amendment are not incorporated in the latter, they shall nevertheless be read into the later amendment as though they had in fact been incorporated therein.*

1 Pa.C.S. § 1954 (italics added). We interpret the concluding language of this provision as legislative recognition that error or other intervening circumstances may frustrate accurate expression of the legislative will, even as recorded in the official paperbooks. Indeed, if the legislature did not contemplate such circumstances, this provision would serve no purpose. *See* 1 Pa. C.S. § 1922(2) (stating presumption of legislative intent that entire statute be effective and certain). More importantly, Section 1954 mandates corrective construction when the content of a succeeding amendment fails to recognize the deletions of its predecessor. In this case such construction requires that we recognize the 1995 deletion of the word "commonly" as though it "had in fact been incorporated" into the 1996 amendment. Thus, we hold that the 1996 amendment, when construed in con-

formity with the Statutory Construction Act, Section 1954, did not reintroduce the requirement of commonality to the definition of "instrument of crime." The word "commonly," as it appears in the text of the 1996 amendment, is not an expression of the legislative will and is, therefore, a legal nullity. Thus, the definition of "instrument of crime" controlling on the date of Magliocco's conduct, and continuing in effect on the date of this Opinion, is:

> Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

Act of July 11, 1996, P.L. 552, No. 98, § 1. *See also* 1 Pa.C.S. §§ 1104(a), 1951, 1954. Applying this definition to the record before us, we conclude without hesitation that Magliocco's acts on July 7, 1999 did in fact constitute PIC. Magliocco does not argue that the facts support any other conclusion. Consequently, we shall affirm his judgment of sentence for PIC.

¶ 14 Magliocco's second question on appeal is directed to his conviction for Ethnic Intimidation. As in the case of his first question, this challenge raises an issue of statutory construction of which our standard of review is plenary. *See Hockenbury*, 701 A.2d at 1336 n. 3.

¶ 15 The Crimes Code defines Ethnic Intimidation as follows:

> **Offense defined.**—A person commits the offense of ethnic intimidation if, with malicious intention toward the race, color, religion or national origin of another individual or group of individuals, *he commits an offense under any other provision of this article or under Chapter 33* (relating to arson, criminal mischief and other property destruction) exclusive of section 3307 (relating to institutional vandalism) *or under section 3503* (relating to criminal trespass) *or under section 5504* (relating to harassment by communication or address)

> *with respect to such individual or his or her property or with respect to one or more members of such group or to their property.*

18 Pa.C.S. § 2710 (italics added).

¶ 16 Magliocco argues that a conviction under this statute requires that the defendant first be convicted of a predicate crime under Section 5504, Section 3503, Chapter 33 (exclusive of Section 3307), or Article B ("this article") of the Crimes Code. Article B of the Crimes Code is comprised of chapters 23, 25, 26, 27, 29, 31, and 32. The record establishes that the Commonwealth did not charge Magliocco with an offense under Section 5504, Section 3503, or Chapter 33. Additionally, the court acquitted him of Terroristic Threats, the only Article B offense charged. Magliocco argues, accordingly, that the separate offense element of the crime of Ethnic Intimidation was not established. We are compelled to agree.

¶ 17 Ethnic Intimidation is by its explicit terms a contingent crime, proof of which is dependent upon the establishment of a predicate crime. *See Commonwealth v. Ferino*, 433 Pa.Super. 306, 640 A.2d 934, 937 (1994), *affirmed by an evenly divided Court*, 540 Pa. 51, 655 A.2d 506 (1995) ("[R]eading Section 2710 in a common-sense fashion, so as to give effect to all of its provisions as intended by the Legislature ..., an offense needs to be committed under the Crimes Code."). In *Commonwealth v. Caine*, 453 Pa.Super. 235, 683 A.2d 890 (1996)(*en banc*), this Court reviewed a defendant's conviction for a similar contingent crime where, as here, the factfinder had acquitted the defendant of the only predicate crime with which he was charged. In *Caine*, the Commonwealth charged the defendant with homicide by vehicle while driving under the influence, and driving while under the influence of alcohol. *See* 683 A.2d at 891 n. 1, 2 (citing 75 Pa.C.S. 3735, 3731 (respectively)). The

statutory definitions of the crimes provided, in pertinent part, as follows:

> **§ 3735. Homicide by vehicle while driving under [the] influence**
>
> **Offense defined.**—Any person who unintentionally causes the death of another person as the direct result of a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) *and who is convicted of violating section 3731* is guilty of a felony of the third degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years.

75 Pa.C.S. § 3735(a) (italics added).

> **§ 3731. Driving under [the] influence of alcohol or controlled substance**
>
> **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle:
>
> (1) while under the influence of alcohol to a degree which renders the person incapable of safe driving;
>
> * * * * * *
>
> (4) while the amount of alcohol by weight in the blood of the person is 0.10% or greater[.]

75 Pa.C.S. § 3731(a)(1), (4).

¶ 18 The trial judge, sitting as the factfinder, convicted the defendant of the homicide by vehicle charge, *see* 75 Pa.C.S. § 3735, but found him not guilty of all other charges, which included the charge of driving under the influence of alcohol, *see* 75 Pa.C.S. § 3731. On appeal the defendant argued that "the evidence was insufficient to sustain his conviction ... because the court did not convict him of driving under the influence, which is an element of homicide by vehicle while driving under the influence." *Caine*, 683 A.2d at 893. We vacated the conviction on the conclusion that:

> Given the clear language of section 3735, we must concede that the trial court's

failure to formally "convict" Appellant of driving under the influence renders the evidence insufficient to support Appellant's conviction of homicide by vehicle while driving under the influence as a matter of law. Reduced to its essence, the legal issue is whether a conviction of homicide by vehicle while driving under the influence requires a formal conviction for driving while under the influence. We can read the statute no other way than that it does.

> * * * * * *

> This is not a case of inconsistent verdicts. Rather, the trial judge's verdict was in error because of the specific failure to satisfy a required element of section 3735 [Homicide by vehicle while driving under influence]—a "conviction" of violating section 3731 [Driving under influence of alcohol or controlled substance]. This failure may have been a[n] oversight, but since the trial judge found Appellant not guilty of the section 3731 charge, the judge's action is beyond amendment.

*Id.* at 893, 894.

¶ 19 The Commonwealth argues that this case is distinguishable from *Caine* because the Ethnic Intimidation statute does not require the Commonwealth to prove that the offender was "convicted" of an offense, but merely requires a showing the he "commit[ed]" the predicate offense. The Commonwealth relies for its contention upon this Court's decision in *Commonwealth v. Cassidy*, 423 Pa.Super. 1, 620 A.2d 9 (1993), *appeal denied*, 536 Pa. 619, 637 A.2d 279 (1993), where this Court sustained a defendant's conviction for corrupt organization even though he had been acquitted of the underlying criminal acts. We conclude that *Cassidy* is not controlling.

¶ 20 In *Cassidy* we interpreted the Corrupt Organizations Act, *see* 18 Pa.C.S.

§ 911, which provides much broader definitions of the proscribed conduct than Section 2710, which defines Ethnic Intimidation. Under the Corrupt Organization Act, an offense could be established by proving, *inter alia*, that a person received income "from a pattern of racketeering activity in which [he] participated as a principal." 18 Pa.C.S. § 911(b)(1). The statute defined the element of "racketeering" as "any act which is indictable" under a prescribed number of Crimes Code chapters. 18 Pa.C.S. § 911(h)(1)(i). Significantly, this language does not require any criminal conviction, but merely a pattern of "indictable" acts.

¶ 21 Secondly, the statute in this case makes clear that conviction of the underlying offense is an essential element of grading the substantive offense. That subsection provides:

> **(b) Grading.**—An offense under this section shall be classified as a misdemeanor of the third degree if the other offense is classified as a summary offense. Otherwise, an offense under this section shall be classified one degree higher in the classification specified in section 106 (relating to classes of offenses) than the classification of the other offense.

18 Pa.C.S. § 2710(b). Thus, if the defendant has been acquitted of the underlying or "other" offense, the crime of Ethnic Intimidation logically can not be graded. Because the trial court acquitted Magliocco of the only underlying offense with which he was charged, we are compelled to conclude that he is entitled to relief on this issue, and his conviction must be reversed.

¶ 22 Judgment of sentence imposed on Magliocco's conviction of PIC **AF-FIRMED.** Judgment of sentence imposed on Magliocco's conviction of Ethnic Intimidation **REVERSED.**

¶ 23 McEWEN, P.J.E. files a Concurring & Dissenting Opinion.

CONCURRING AND DISSENTING OPINION BY McEWEN, P.J.E.

¶ 1 The author of the Majority Opinion has undertaken his usual perceptive and persuasive expression of rationale, and I join in that part of the Opinion supporting the reversal of appellant's conviction for ethnic intimidation. I am compelled, however, and quite respectfully, to depart from the decision to affirm appellant's conviction for possession of an instrument of crime.

¶ 2 Appellant contends that the Commonwealth's evidence was insufficient to sustain the conviction for possessing an instrument of crime because it failed to prove that baseball bats are "commonly" used for criminal purposes. As the Majority Opinion recounts, this argument implicates fundamental principles of statutory construction.

¶ 3 The offense of "possessing instruments of crime" is defined in the Crimes Code as follows:

> A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

18 Pa.C.S. § 907(a). An "instrument of crime" is defined as:

> Anything **commonly** used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

18 Pa.C.S. § 907(d)(2) (emphasis supplied).[1] This latter definition is derived from the 1996 amendment to section 907 of

---

1. This language differs from that reproduced in Purdon's Pennsylvania Consolidated Statutes Annotated, which does not contain the highlighted word "commonly." Given this unusual divergence between what is in the official reports and the unofficial volume that is so often depended upon by lawyers and trial courts, this Court sought certification

the Code.[2] That amendment followed a 1995 amendment [3] that had deleted the word "commonly" from the definition of "instrument of crime." The 1995 amendment had been passed in apparent response to the Pennsylvania Supreme Court's decision in *Commonwealth v. Ngow,* 539 Pa. 294, 652 A.2d 305 (1995), a case in which the Supreme Court held that the Commonwealth could not sustain its burden of proof to show that a baseball bat was an instrument of crime without producing evidence that "a significant proportion of assaults involve[d] baseball bats." *Id.* at 297, 652 A.2d at 306.[4]

¶ 4 The trial judge acknowledged the fact that the statute contained the modifier "commonly" but concluded, nonetheless, that "the 1996 amendment overlooked the 1995 amendment and, on its face, appeared to amend the pre–1995 amendment version of the statute," and found that the commonness of use requirement did not apply.[5] I am unable to accept this analysis.

---

from the "Office of the Secretary of the Commonwealth" so as to verify the official version of the statute. In response, we received the following certification:

> I, Kim Pizzingrilli, Secretary of the Commonwealth of Pennsylvania, DO HEREBY CERTIFY, that it appears by the records of this office that the attached is a true and correct copy of Act 98 of 1996, passed on the 11th day of July, 1996, as the same appears of record and remains on file in this office.
>
> IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the seal of my Office to be affixed, the day and year above written [December 17, 2001].
> */s/ Kim Pizzingrilli*
> Secretary of the Commonwealth

Attached to this certification is a page from the *Laws of Pennsylvania,* the official Pennsylvania statutes, which recites the definition of "instrument of crime" identical to that set out in the body of this Dissenting Opinion. This certification confirms that the applicable statute did contain, and continues to contain, the word "commonly" as a modifier for the element "used".

2. Act of July 11, 1996, P.L. 552, No. 98, § 1.

3. Act of July 6, 1995, P.L. 238, No. 27, § 1.

4. The basis of the Court's rationale was that "commonness of use [was] an element of the crime and must be proved beyond a reasonable doubt." *Commonwealth v. Ngow,* 539 Pa. 294, 297, 652 A.2d 305, 306 (1995).

5. The trial court opined:

> The defendant asserts that although the possession of an instrument of crime statute was amended in 1995 to eliminate the "commonness of use" requirement, the requirement was restored in a subsequent amendment in 1996.... The sole effect of the 1995 amendment was to eliminate the "commonness of use" requirement and was a direct response to a 1995 decision by the Pennsylvania Supreme Court that a baseball bat cannot be considered to be an instrument of crime unless the Commonwealth proves through competent evidence that "a significant proportion of assaults involves baseball bats." *Commonwealth v. Ngow,* 539 Pa. 294, 652 A.2d 305 (1995). On the other hand, the 1996 amendment made it a criminal offense to possess "unlawful body armor" and made some minor stylistic changes to the statute. The 1996 amendment overlooked the 1995 amendment and, on its face, appeared to amend the pre–1995 amendment version of the statute, which included the "commonness of use" requirement. However, where the 1996 amendment properly underscored and bracketed the "unlawful body armor" and stylistic changes, it simply included the word "commonly" without in any way indicating that it was being reinserted into the statute. The question of whether the commonness of use requirement was again made part of the statute is answered by the rule of statutory construction set forth at 1 Pa.C.S. § 1954:
>
> > "Whenever a statute has been more than once amended, the latest amendment shall be read into the original statute as previously amended and not into such statute as originally enacted. This rule applies whether or not the previous amendment is referred to and whether or not its language is incorporated in the

¶ 5 The Pennsylvania Statutory Construction Act provides in relevant part that:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to *all* its provisions.

(b) When the words of a statute are clear and free from all ambiguity, *the letter of it is not to be disregarded under the pretext of pursuing its spirit.*

1 Pa.C.S. § 1921(a),(b) (emphasis supplied).

¶ 6 The late, legendary Justice James T. McDermott, opined for the Supreme Court in *Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662 (1983), that

[a] statute must be construed if possible to give effect to all of its provisions. *Commonwealth v. Pope*, 455 Pa. 384, 317 A.2d 887 (1974); *Commonwealth v. McHugh*, 406 Pa. 566, 178 A.2d 556 (1962). It is presumed that *every word, sentence or provision of a statute is intended for some purpose and accordingly must be given effect;* and if a statute contains its own definitions, the meaning of a term as defined at common law, or as construed under prior statutes is not controlling. *See Commonwealth v. Sitkin's Junk Co.*, 412 Pa. 132, 194 A.2d 199 (1963).

*Lobiondo, supra* at 603, 462 A.2d at 664 (emphasis supplied).

¶ 7 Mindful of this guidance from the Supreme Court, this Court, in *Commonwealth v. Lopez*, 444 Pa.Super. 206, 663

A.2d 746 (1995), summarized this principle of statutory construction as follows:

When interpreting a statute, the court must ascertain and effectuate the intent of the legislature and *give full effect to each provision of the statute if at all possible.* 1 Pa.C.S. § 1921(a); *Commonwealth v. Brown*, 423 Pa.Super. 264, 266, 620 A.2d 1213, 1214 (1993); *Commonwealth v. Edwards*, 384 Pa.Super. 454, 460, 559 A.2d 63, 66 (1989), *appeal denied*, 523 Pa. 640, 565 A.2d 1165 (1989). In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. 1 Pa.C.S. § 1903(a). *See Commonwealth v. Berryman*, 437 Pa.Super. 258, 649 A.2d 961 (1994) (*en banc*).

*Lopez, supra* at 748 (emphasis supplied). And in the case of *Grom v. Burgoon*, 448 Pa.Super. 616, 672 A.2d 823 (1996), this Court further explained:

When the words of a statute are clear and unambiguous, a court cannot disregard them under the pretext of pursuing the spirit of the statute. 1 Pa.C.S. § 1921(a); *Coretsky v. Board of Commissioners of Butler Township*, 520 Pa. 513, 555 A.2d 72 (1989). Only if a statute is unclear may a court embark upon the task of ascertaining the intent of the legislature by reviewing the necessity of the act, the object to be attained, the circumstances under which it was enacted and the mischief to be remedied. *Id.*

latest amendment. If the insertions in and the deletions from the statute made by the previous amendment are not incorporated in the latter, they shall nevertheless be read into the later amendment as though they had in fact been incorporated therein."

Consequently, the Commonwealth was [not] required to prove that a baseball bat is commonly used for criminal purposes. *Cf. Commowealth v. Vida*, 715 A.2d 1180 (Pa.Super.1998), *appeal denied*, 558 Pa. 608, 736 A.2d 604 (1999) (paint stick held to be an instrument of crime—statute does

at 517–18, 555 A.2d at 74 (citing 1 Pa. C.S. § 1921(c)).

*Grom, supra* at 825.

¶ 8 The Commonwealth contends, and the Majority essentially agrees, that we should extrapolate from the history of this statute an interpretation of section 907 that omits the word "commonly." In support of this argument the Commonwealth relies upon section 1954 of the Statutory Construction Act, which provides, *inter alia,* that if "insertions in and the deletions from [a] statute made by [a] previous amendment are not incorporated in the latter, they shall nevertheless be read into the later amendment as though they had in fact been incorporated therein." 1 Pa. C.S. § 1954. While this "corrective construction" section may be effective in the context of a civil statute,[6] it simply cannot stand constitutional scrutiny in the criminal context, where the law is clear that legislative enactments must "give fair

warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Carmell v. Texas,* 529 U.S. 513, 531 n. 21, 120 S.Ct. 1620, 1632 n. 21, 146 L.Ed.2d 577, 594 n. 21 (2000).[7]

¶ 9 For the above-stated reasons I cannot join the decision to "correct" what is perceived as a legislative mistake, and must adhere to the position that any "correcting" of this statute should be undertaken by the General Assembly. Since, therefore, I would measure the Commonwealth's evidence against the explicit language of the statute,[8] I am compelled to the conclusion that the Commonwealth's evidence was insufficient to sustain appellant's conviction of possession of an instrument of crime, *Commonwealth v. Ngow, supra,* and I would, therefore, vacate the conviction on this charge.

not require showing that instrument is commonly used for criminal purposes).

6. It bears mention, however, that research discloses no instances in which the effectiveness of this section has been tested.

7. It also bears emphasis that the Pennsylvania Statutory Construction Act specifically delin-

eates "[p]enal provisions" as one of the categories which require "strict" construction. 1 Pa.C.S. § 1928(b)(1).

8. Because this is a pure question of law, our standard of review governing this inquiry is plenary. *Commonwealth v. Hockenbury,* 549 Pa. 527, 531 n. 3, 701 A.2d 1334, 1336 n. 3 (1997).